# Commonwealth *v.* Andrews, Appellant.

*Criminal law—Murder—Evidence—Alibi—Erroneous charge.*

1. Where the main purpose of evidence adduced by a defendant in a murder trial is to establish an alibi, but not the only purpose, it is error for the court in its charge to confine the effect of such evidence to the one purpose of establishing the alibi.

2. On the trial of an indictment for murder where the evidence against the prisoner is purely circumstantial, and the defendant offers evidence for the purpose in part of establishing an alibi, it is error for the court to charge in such a way as to leave the jury to understand that they are to scrutinize more closely the evidence offered to show absence of the defendant from the scene of murder when perpetrated, than that offered to show his presence at the time, on the ground that the former was open to the suspicion that it was the product of subornation and perjury.

3. The measure of proof when the sufficiency of evidence offered to establish an alibi is the question, is simply that it shall be satisfactory. It need not be beyond doubt. Where the evidence raises a balancing question, and the mind is brought to determine its preponderance, there may be a doubt still existing in the mind, yet the actual weight may be with the prisoner; and this proof will be considered satisfactory.

4. Proof of an alibi is as much a traverse of the crime charged, as any other defense, and proof tending to establish it while not clear, may, nevertheless with other facts of the case, raise doubt enough to produce an acquittal.

*Criminal law—Murder—Good reputation—Charge—Motive—Reasonable doubt.*

5. On the trial of an indictment for murder where twenty or more witnesses testify to the good character of the accused, the charge is wholly inadequate as to such testimony where it merely says "some twenty witnesses were called upon the part of the defendant to testify to the general good character of the defendant, as a peaceable, law-abiding citizen," and such inadequacy is not cured by an instruction in answer to points that "the evidence of this character is to be considered with the other evidence in the case, and if all the evidence combined creates a reasonable doubt, the defendant is entitled to acquittal."

6. On the trial of an indictment for murder where the motive charged was the desire of the accused to prevent the deceased from

598   COMMONWEALTH *v.* ANDREWS, Appellant.

testifying in an inquiry as to a charge of embezzlement against the accused, it is only necessary to show the charge against the accused; that the investigation was still proceeding, that the deceased had been requested and was expected to testify; that his testimony, if given, would have inculpated the accused. Here the inquiry should have ceased.

7. In every murder trial it is the duty of the trial judge to explain to the jury what they are to understand by reasonable doubt. It is proper for the court to say that the juror ought not to condemn unless he is so convinced by the evidence that he would venture to act upon that conviction in matters of the highest concern and importance to his own interest.

Argued Jan. 8, 1912. Appeal, No. 256, Jan. T., 1911, by defendant from judgment of O. & T. Warren Co., June Sessions, 1911, No. 1, on verdict of guilty of murder of the first degree in case of Commonwealth v. John M. Andrews. Before FELL, .C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Indictment for murder. Before HINCKLEY, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict of guilty of murder of the first degree upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions, and particularly (21) portion of the charge quoted in the opinion of the Supreme Court.

*D. U. Arird* and *James Scarlet,* for appellant.—The court neglected to call the attention of the jury to the numerous witnesses produced on part of the defendant showing the defendant's freedom from lawlessness, his quiet habits and his regularity of conduct: Com. v. Colandro, 231 Pa. 343; Com. v. Silcox, 161 Pa. 484;

Minick v. Gring, 1 Pa. Superior Ct. 484; Hanney v. Com., 116 Pa. 322; Com. v. Cleary, 135 Pa. 64.

Under this instruction the defendant's guilt or innocence is made to depend and was restricted solely to the inquiry as to whether the defendant's alibi was made out beyond a reasonable doubt: Com. v. Guttshall, 22 Pa. Super. Ct. 269; Turner v. Com. 86 Pa. 54; Briceland v. Com., 74 Pa. 463; Lack. & Bloomsburg R. R. v. Chenewith, 52 Pa. 382; Deal v. McCormick, 3 S. & R. 343; Rudy v. Com., 128 Pa. 500; Com. v. Deitrick, 218 Pa. 36; Meyers v. Com., 83 Pa. 131.

To subject the testimony offered to support alibi to a more rigid scrutiny than any other evidence in the case is not the rule: Com. v. Webster, 59 Mass. 295; People v. Hare, 57 Mich. 505 (24 N. W. Repr. 843) ; People v. Keely, 35 Hun. 295.

*Frank J. Lyons,* District Attorney, with him *T. C. Cochran,* Assistant District Attorney, for appellee.— Proof of motive is never indispensable. The law does not require impossibilities: Pointer v. U. S., 151 U. S. 396 (14 Sup. Ct. Repr. 410).

If the defense of alibi is false or manufactured, it should go for nothing, and have some weight against the defendant: Com. v. McMahon, 145 Pa. 413.

OPINION BY MR. JUSTICE STEWART, February 5, 1912:

The defendant stands convicted of murder in the first degree. The evidence on which his conviction rested was purely circumstantial, a matter of no significance, if it carried conviction to the minds of the jury of the defendant's guilt beyond reasonable doubt. This is all that is required of any evidence, whether direct or circumstantial. And yet, in view of what we shall have to say as to the instructions given by the court to the jury, it has a distinct place in the discussion. The evidence discloses these facts. Emile Amann, whose death is charged to the defendant, was a resident of Warren bor-

ough. For a number of years he had been an employee
of the Warren Water Company, in charge of the com-
pany's outside work, such as the laying of pipes, setting
of hydrants, etc. The defendant had been superintend-
ent of the company during the period of Amann's em-
ployment, excepting that his withdrawal from the serv-
ices of the company occurred 25th of March, 1910,
whereas Amann continued in its employ some three
weeks thereafter. Amann met his death on the night of
27th January, 1911, at a time when neither was an em-
ployee of the company. On the evening of the day last
mentioned Amann, about 8 o'clock or a few minutes
thereafter, hired a horse and buggy for the purpose of
going to the reservoir of the Water Company on what
was called Bunker Hill, about one-half mile distant,
stating that he would return in thirty-five minutes. He
was afterwards seen driving through one of the public
streets in the direction of the reservoir. About 11
o'clock of the same night the horse, unattached to the
buggy, with the harness unbroken, returned to the liv-
ery stable where he belonged. The following morning
the lifeless body of Amann was found on the reservoir
hill, prone on the ground, face downward with three bul-
let wounds in the head, either one of which, according
to the expert testimony, was sufficient to have caused in-
stant death. This circumstance, with others no less
significant, excluded all suspicion of suicide, leaving
but the one conclusion, that a felonious homicide had
been committed. The evidence relied upon to establish
the defendant's guilt in connection therewith was to this
effect. It was shown that Amann had started from the
livery stable in the buggy some minutes after 8 o'clock,
not later than 8:15. The time is important to observe.
A witness—we are now referring to the evidence for the
Commonwealth—testified that at 8:10 he saw him drive
up the street toward the reservoir; another, that he saw
him drive up the same street at a point one-half block
from the starting place at 8:10; another, that he saw

him stop on his way in front of defendant's house, saw defendant, in response to a whistle given by Amann, come out of the house, get in the buggy with Amann, that both then proceeded on their way, and that at 8:15 they were at the foot of the hill which had to be turned in order to reach the reservoir; still another testified that after hearing shots fired in the direction of the hill, he saw the defendant coming rapidly down the hill from the field where the body was found, stop under an electric light, examine his clothes, and then run down the street. The testimony seemed to be concurrent that the time when the pistol shots were heard was 8:30. Other evidence claimed to be incriminatory was adduced, but calls for no special reference at this time, since disassociated from the matter of time when shots were fired and the time when defendant was claimed to have been seen at certain points on the way leading to the place where the crime was committed, its insufficiency to establish guilt must be conceded. To meet the case of the Commonwealth, defendant called a number of witnesses with a view to showing that he could not have been the actor in the tragedy, for the reason that at 8:30, when it occurred, he was too remote from the scene, and further, to discredit and contradict the Commonwealth's witnesses. Two of defendant's witnesses say that they saw him, one as late as 8:15, the other, as late as 8:20, at the post-office in Warren, one-half mile away; another, that at 8:45 he conversed with the defendant, who was then in his home, over the telephone, that following that conversation he went to the defendant's house, where he remained in conversation with him until 10 o'clock, and that there was nothing unusual in his appearance or manner. Other witnesses testified in his behalf to facts and circumstances which, it is claimed, show such marked inaccuracy in statements made by some of the Commonwealth's witnesses, one in particular, whose testimony was most important, as to make it unreliable.

We have thus called attention to the conflict of testimony in the case, not as a circumstance which impeaches the finding of the jury, for notwithstanding such conflict, and regardless of how other minds might be impressed thereby, if the jury, under proper instructions as to the law, were convinced beyond reasonable doubt of defendant's guilt, the verdict should remain undisturbed. Our only purpose in introducing it here is to show that because of this state of the evidence, and its circumstantial character, the instructions given the jury were inadequate, and in some important matters so inadequate as to be positively erroneous.

Unquestionably the main purpose of the evidence adduced by the defendant was to establish an alibi. Equally certain it is, however, that this was not its only purpose; and if the effect of that evidence was confined by the court to the one purpose alone, such restriction was unfair to the defendant and erroneous. The only reference to this feature of the case in the charge of the court was at its close, and is in these words: "The defendant relies upon evidence in the nature of an alibi; that is to say, that he was at another place at the time the crime was committed. * * * This defense when satisfactorily made out necessarily overturns the strongest circumstantial evidence and is sometimes the only defense to an innocent man. But in every case where the defense of alibi is made it should be very closely scrutinized for the reason so forcibly expressed by an eminent judge. It is a defense often attempted by contrivance, subornation or perjury, and the proof therefore offered to sustain it, is to be subjected to a rigid scrutiny, because, without attempting to contest or rebut the evidence of facts sustaining the charge, it attempts to prove affirmatively another fact wholly inconsistent with it, and this defense is equally available if satisfactorily established to avoid the force of positive as of circumstantial evidence." This instruction is very largely, if not entirely, an excerpt from the

charge of Chief Justice SHAW in the celebrated case of Commonwealth v. Webster, 59 Mass. 295. To say this, is to concede its correctness in the connection in which it was employed by that eminent jurist. But had the learned trial judge in this case looked further into that case, he would have found that this instruction followed upon instruction laying down a no less exacting rule to be applied in determining the effect of accusing evidence in cases where circumstances are relied upon to convict. For instance, after reviewing the evidence of the Commonwealth in his charge, he adds: "I will conclude what I have to say on this subject, by a reference to a few obvious and well-established rules, suggested by experience, to be applied to the reception and effect of circumstantial evidence. The first is, that the several circumstances upon which the conclusion depends must be fully established by proof. They are facts from which the main fact has to be inferred; and they are to be proved by competent evidence, and by the same weight and force of evidence, as if each one were itself the main fact in issue. Under this rule, every circumstance relied upon as material is to be brought to the test of strict proof; and great care is to be taken in guarding against feigned and pretended circumstances, which may be designedly contrived and arranged, so as to create or divert suspicion and prevent the discovery of the truth." Had like instruction with this been given in the present case with respect to the circumstantial evidence adduced against defendant, the court's employment of the words of Chief Justice SHAW, with respect to evidence adduced to establish an alibi, would have been entirely appropriate and fair; but in the absence of such instruction, the natural understanding of the jury would be that the direction required them to scrutinize more closely the evidence offered to show absence of the defendant from the scene of the murder when perpetrated, than that offered to show his presence at the time; for the reason, that the former was open to the

suspicion that it was the product of subornation and perjury, while the latter was not. Could any instruction have been more unfair and prejudicial? Again, the instruction afforded the jury no standard by which they were to measure the sufficiency of the evidence offered to establish the alibi. The defendant had a right, even though no request was made for the instruction, to have the jury fully advised as to the difference between the burden resting upon the Commonwealth to establish guilt, and that resting on the defendant with respect to the alibi set up. How are we to know that the jury did not reject the defendant's alibi because the evidence supporting it did not measure to the high degree which excluded all reasonable doubt? If they did, it was a most serious mistake into which they fell because they were not instructed to avoid it; if they did not, their avoidance of the mistake was not due to any warning they had received from the court. The measure of proof, when the sufficiency of evidence offered to establish an alibi is the question, is simply that it shall be satisfactory. "That measure is simply proof which is satisfactory—such as flows fairly from a preponderance of the evidence. It need not be beyond doubt. Where the evidence raises a balancing question, and the mind is brought to determine its preponderance, there may be a doubt still existing in the mind, yet the actual weight may be with the prisoner; and this proof should be considered satisfactory." Meyers v. Commonwealth, 83 Pa. 131. And yet again, it was error, hardly less serious, to treat the evidence tending to show alibi as though it was without relevancy if it failed in this one purpose. The charge does not in express terms so limit it, but a general relevancy in the testimony is not even suggested, and the inference likely to be drawn by the jury would be that it was to be considered only in the one connection. "Proof of an alibi is as much a traverse of the crime charged as any other defense, and proof tending to establish it, though not clear, may, nevertheless, with

other facts of the case, raise doubt enough to produce an acquittal." Turner v. Commonwealth, 86 Pa. 54. As a fair illustration of what is here meant, there may inhere in such testimony that which, being considered, might lessen the confidence which the jury otherwise might have in the correctness of the testimony of some opposing witness to a most important, perhaps controlling circumstance, and leave them in doubt as to its occurrence, or as to the time and place where it occurred, if at all. Or, as here stated, it may be that this evidence being included and submitted to the jury for their consideration, because of its inclusion, upon a review of the whole case, the jury would not be left free of reasonable doubt as to the guilt of the accused. The considerations we have discussed properly fall within the scope of the twenty-first assignment of error, and that assignment is sustained.

There remain forty-one assignments. A discussion of each of these is wholly impracticable. A number of them indicate distinct error, but whether reversible or not we need not decide since reversal follows upon what we have already said. Inasmuch, however, as the case must again be tried, we shall indicate briefly those particulars in which the court erred to greater or less extent. First, remembering the case against the accused rested wholly on circumstantial evidence, what was said by the court in Commonwealth v. Cleary, 135 Pa. 64, touching the effect of evidence of the good reputation of the accused in such cases, may here be appropriately cited: "Evidence of good character is always admissible for the defendant in a criminal case; it is to be weighed and considered in connection with the other evidence in the cause,—it may of itself, in some instances, create the reasonable doubt which would entitle the accused to an acquittal. The rule itself is not merely merciful. It is both reasonable and just. There may be cases in which, owing to the peculiar circumstances in which a man is placed, evidence of good

character may be all he can offer in answer to a charge of crime. Of what avail is a good character, which a man may have been a lifetime acquiring, if it is to benefit him nothing in his hour of peril?" In the present case twenty or more witnesses testified to the good character of the accused. The contrary was not asserted. The only reference to this testimony in the general charge is as follows: "Some twenty witnesses were called upon the part of the defendant to testify to the general good character of the defendant as a peaceable, law-abiding citizen." Not a word appears in the general charge as to the legal effect of such evidence, or as to how it was to be considered and applied. From the manner in which it was thus treated by the trial judge, with not a single reference to it than that above quoted, the jury might well have inferred that in the judgment of the court it called for no consideration. The attention of the court was directed to it in three of the submitted points, each framed out of language used by this court in some particular decision. The ruling therein was as follows: "These points are affirmed in connection with which we say, as a general proposition, that the evidence of this character is to be considered with the other evidence in the case, and if all the evidence combined creates a reasonable doubt, the defendant is entitled to acquittal. That is, it is to be weighed and considered in connection with all the evidence in the case." This answer, like the points, was framed in language adopted by this court, Commonwealth v. Cleary, 135 Pa. 64, a sufficient authority for its legal correctness, but no authority for its sufficiency under the circumstances of this case. The instruction of the court in regard to this matter, we cannot but regard as not only inadequate in that it failed to convey to the jury a proper understanding as to how they should apply the evidence, but because it must have minimized its importance in the estimation of the jury.

The trial occupied more than two weeks.  Less than one would most likely have been sufficient but for the fact that a wholly collateral inquiry was entered upon, which, aside from prolonging the trial unduly, may have had the more serious result of diverting the minds of the jury from the one issue before them.  It is competent in every criminal case to introduce evidence to show motive in the accused.  The motive charged here was the desire of the accused to prevent Amann from appearing and testifying in an inquiry which had been instituted by those interested with respect to the accused's accounts as superintendent of the Water Company.  In connection with this inquiry the charge had been made that the accused had embezzled the funds of the company by means of fraudulent statements and accounts.  Amann's testimony had been requested by those who were investigating the matter.  The theory of the Commonwealth was that Amann, because of his position with the company during the time covered by the investigation, had knowledge of facts which would incriminate the accused, and that to prevent his testifying against him the accused took his life.  Whatever went in support of this theory was relevant, and therefore, competent testimony.  Whether the accused, however, had actually been guilty of the embezzlement charged was an inquiry wholly outside.  It was proper enough to show that those pursuing the investigation had made the charge against him; that the investigation was still proceeding; that Amann had been requested and was expected to testify; that his testimony, if given, would have inculpated the accused; but there the inquiry should have ceased.  Instead, however, it proceeded until it became an inquiry as to the guilt or innocence of the accused with respect to the charge that had been made.  To this end maps, plans, plants and measurements showing different extensions of the pipe system of the company were introduced, and accounts in connection therewith, from

all of which it was sought to derive an inference of defendant's guilt. The relevancy of this sort of testimony was more than doubtful, and besides must have tended to divert the attention of the jury from the real issue; and not only so, but a conclusion of defendant's guilt with respect to it would most likely be followed by a prejudice to which the defendant could not rightfully be exposed.

The failure of the court to explain to the jury what they were to understand by a reasonable doubt, calls for remark. We are quite aware that in some jurisdictions it is held that this is unnecessary, because the expression is itself well calculated to convey to the juror a correct idea of what is expected of him, and that any effort at elucidation tends to misleading refinements. The reason given for this conclusion is to our mind unsatisfactory. Our own experience leads to the belief that, except as instructed by the court, the ordinary juror fails in proper comprehension of what is implied in the term, or at least is apt to so fail. Helpful elucidation of the term has been so frequently accomplished, as our text books and reports show, that the danger of misleading in the attempt to elucidate is easily avoided. What is to prevent a trial judge from instructing, in the language of Mr. Starkie, that the juror ought not to condemn unless he is so convinced by the evidence that he would venture to act upon that conviction in matters of the highest concern and importance to his own interest? Here we have a concise statement of what is implied in the term which brings it clearly to the comprehension of any ordinary mind, and this, or at least its equivalent, expressed in various ways in adjudicated cases, should be made the matter of instruction in every murder trial.

We have adverted to those features of the charge which we regard as fairly open to criticism only that the errors indicated may be avoided on the next trial. Having thus expressed our views as to the case, and

since a new trial must follow, we do not feel called upon to discuss the numerous assignments unrelated to what we have remarked upon.

For the reasons given the judgment is reversed, and a venire de novo is awarded.