# Commonwealth *v.* Berney, Appellant (No. 1).

*Criminal law—Leasing house for improper purposes—Evidence —Agreement of sale—Bawdy house.*

A conviction on an indictment for leasing a house to be "conducted as a common bawdy house," will be sustained where it appears that the defendant solicited a woman to come to the town where he lived for the purpose of opening a bawdy house; that acting as agent for his wife he executed an agreement of sale providing for payment by monthly installments; that according to the woman the agreement of sale had been entered into because the defendant would not execute a lease for fear of getting into trouble; that he knew the character of the house, visited it and sold wearing apparel to the inmates; that he had promised the woman police protection, and had tried to bribe the local officers for such protection.

In such a case the Commonwealth has a right to question the bona fides in the agreement of sale, although there was no allegation of fraud, accident or mistake, inasmuch as the Commonwealth was a stranger to the agreement, and not bound by it in any way.

*Criminal law—Charge of court—Reasonable doubt.*

On the trial of an indictment for leasing a house to be "conducted as a common bawdy house," the charge is sufficient on the subject of reasonable doubt where the judge says "You have heard the evidence here; consider all of it and give it such weight as you think it is entitled to. If after considering all the evidence in this case, you are satisfied beyond a reasonable doubt that this defendant did lease the premises to Cad McKee for the purpose of conducting a bawdy house, and that she did conduct such a house there (and there seems to be no doubt about that, I understand that question is not contradicted by the defense) then this defendant will be guilty. If, however, you are not satisfied beyond a reasonable doubt that he did lease the premises knowing that she was to conduct it as a bawdy house, then, your verdict would be 'Not guilty.'"

Argued Oct. 23, 1916. Appeal, No. 130, Oct. T., 1916, by defendant, from judgment of Q. S. Blair Co., Oct. T., 1915, No. 38, on verdict of guilty in case of Commonwealth v. B. J. Berney. Before ORLADY, P. J., PORTER,

434, (1917).] Assignment of Errors—Opinion of the Court.
HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS,
JJ. Affirmed.

Indictment for leasing a house to be conducted as a
common bawdy house. Before BALDRIGE, P. J.

The facts are stated in the opinion of the Superior
Court.

Verdict of guilty upon which judgment of sentence
was passed that defendant pay costs and undergo an im-
prisonment in the county jail for forty-five days.

*Errors assigned,* among others, were (1) in submit-
ting the case to the jury and (3) the portion of the
charge relating to reasonable doubt quoted in the opin-
ion of the Superior Court.

*W. C. Fletcher,* for appellant.—The court below erred
in overruling defendant's motion made at the close of the
testimony, and in submitting the case to the jury: Com.
v. Lavery, 247 Pa. 139.

The charge as to reasonable doubt was inadequate:
Commonwealth v. Hoskins, 60 Pa. Superior Ct. 230;
Commonwealth v. Rider, 29 Pa. Superior Ct. 621; Com-
monwealth v. Andrews, 234 Pa. 597.

*Marion D. Patterson,* District Attorney, for appellee.
—Where matters of fact depend on testimony partly
written and partly oral, the court is not bound to con-
strue the former as though it stood alone but the latter
should be submitted to the jury: Carbarga v. Seeger, 17
Pa. 514; Home B. & L. Assn. v. Kilpatrick, 140 Pa. 405.

The charge as to reasonable doubt was sufficient:
Com. v. Andrews, 234 Pa. 597; Com. v. Bober, 59 Pa.
Superior Ct. 573.

OPINION BY WILLIAMS, J., April 30, 1917:

The appellant was tried and convicted of having know-
ingly let or demised a certain house to one ·Cad McKee

"to be by her kept, maintained and conducted as a common bawdy house and place for the practice of fornication."

The testimony of the Commonwealth was that the McKee woman had been solicited by the defendant to come to the town where he lived and open a bawdy house in property belonging to his wife for whom he acted as agent; that the house was turned over to the McKee woman under an agreement of sale which provided that she should pay $200 down and $55 a month thereafter, the purchase-price being set at $5,500; that she paid the $200, got possession of, and operated the place as a bawdy house; and that he came there about two or three times a week selling articles of wearing apparel to the inmates, knowing their business. When asked why the agreement of sale had been entered into, she answered that it was the only way she could get the house as he would not lease it for fear of getting in trouble. He also promised her protection from police interference, and tried to bribe local officers, giving one of them a ten-dollar bill on two occasions. On behalf of the defendant it was contended that the property had not been leased, and that the transaction was a bona fide agreement of sale.

The court, after reviewing the testimony, charged as follows: "We say to you that if after considering all the testimony, you would conclude that this contract, as offered in evidence, was entered into for the purpose of endeavoring to evade the law, that it was not the intent and purpose of the parties thereto that Cad McKee should become the purchaser, but simply for the purpose of being a lessee, and that it was with the knowledge of the defendant that Cad McKee was going to operate a house of prostitution, and that the defendant did lease to her, he would be guilty of leasing a bawdy house." The verdict was guilty and the defendant was sentenced to pay the costs and undergo an imprisonment of forty-five days in the county jail. From this sentence the de-

fendant has appealed, alleging two errors, viz: in not explaining the meaning of "beyond a reasonable doubt"; and in submitting the case to the jury.

The contention that the Commonwealth had no right to question the bona fides of the agreement of sale in the absence of an allegation of fraud, accident or mistake, cannot be sustained.    The Commonwealth is a stranger to the agreement, and, as such, is not bound by it in any way: Krider v. Lafferty, 1. Wharton *303, 302; Highlands v. Cumberland, etc., Co., 203 Pa. 134; Johnson v. Stewart, 243 Pa. 485, 500.

Courts of justice will never permit an unlawful thing to be done indirectly, and will always look through the form and find the substance, if such substance is the subject of competent proof.

The appellant further complains that the charge of the court failed to explain the meaning of the words "reasonable doubt."

The charge was as follows: "Now gentlemen, you have heard the evidence here; consider all of it and give it such weight as you think it is entitled to.  If after considering all the evidence in this case, you are satisfied beyond a reasonable doubt that this defendant did lease the premises to Cad McKee for the purpose of conducting a bawdy house, and that she did conduct such a house there, (and there seems to be no doubt about that, I understand that question is not contradicted by the defense) then this defendant would be guilty.  If however, you are not satisfied, beyond a reasonable doubt that he did lease the premises, knowing that she was to conduct it as a bawdy house, then, your verdict would be 'not guilty.' " We think the charge was a fair and adequate presentation of the meaning of the words "beyond a reasonable doubt" as applicable to the facts of the case.

The judgment is affirmed and the record is remitted to the court below for the purpose of execution; and to that end it is ordered that the defendant appear in that

438 COMMONWEALTH *v.* BERNEY, Appellant (No. 1).

Opinion of the Court—Dissenting Opinion. [66 Pa. Superior Ct.

court at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part thereof that has not been performed.

DISSENTING OPINION BY ORLADY, P. J.:

This record clearly discloses the fact that the trial judge was of the opinion that the instruction he had given to the jury on the question of reasonable doubt was inadequate.

In refusing a new trial, the court below felt it necessary to advert to and rely upon an incident that was not connected in any manner with the trial of this case, and stated "The burden of the argument for a new trial is that the court failed to explain to the jury the meaning of reasonable doubt. It was unquestionably the duty of the court to convey to the jury the clear and accurate meaning of this legal expression. In the course of the week's trials, there were a number of defendants charged with minor offenses, and where the term had been frequently and specifically referred to and explained, we do not believe that our appellate courts intend that in every case where the crime charged is of a minor nature, it is necessary to enlarge and amplify on the meaning of reasonable doubt. In the first case that was tried we expressly called attention, not only to the jury in the box, but all other jurors of the panel, that no defendant could be convicted unless the jury was satisfied beyond a reasonable doubt of his guilt, and fully explained the legal meaning and application of this expression. The jurors were reminded twice in the charge that they could not convict this defendant unless they were satisfied of his guilt beyond a reasonable doubt."

The district attorney also urges, as part of his argument, a charge by the court delivered "at the opening of the session on Monday morning to all the panel of jurors."

Such a proceeding is unwarranted and is fraught with

great danger, there being no authority for such a practice under our administration of law.

A charge "to the whole panel" of jurors should have no place on this record; nor is there anything to show that any juror impaneled in this case heard this preliminary advice. It had no legal relation to the issue joined between the Commonwealth and this defendant, and had no more juridical value in this issue than if read in a newspaper. There was no opportunity for counsel to except to anything then said; no juror was then sworn; no issue was then joined, and no record was made of such an address.

It cannot be a prefix to or supplement a charge to a jury in a criminal case so as to validate any deficiency therein. Without regard to the grade of the crime charged, every defendant is entitled under our practice to have the legal significance of the term reasonable doubt, fairly explained to the jury impaneled to determine his guilt or innocence. To withhold such an explanation as will be comprehended by the ordinary juryman, after he has been impaneled, is a denial of a right to which every defendant is entitled under our practice, and I know of no distinction being made between misdemeanors and felonies. "In all criminal prosecutions," are the words of our constitution, "an accused cannot be deprived of his life, liberty or property unless by the judgment of his peers, or by the law of the land."

While this defendant was sentenced only to pay the costs in each case, and to undergo an imprisonment of ninety days in the county jail, yet, what may be named in our code schedule of crimes, as a charge of a minor nature, it may, and oftentimes is a very serious one to the defendant. As stated by STEWART, J., in Commonwealth v. Andrews, 234 Pa. 597. "Our own experience leads to the belief that, except as instructed by the court, the ordinary juror fails in proper comprehension of what is implied in the term, or at least is apt to so fail. Helpful elucidation of the term has been so frequently

accomplished, as our text books and reports show, that the danger of misleading in the attempt to elucidate is easily avoided." See also Commonwealth v. Deitrick, 221 Pa. 7; Commonwealth v. Rider, 29 Pa. Superior Ct. 621; Commonwealth v. Duffy, 49 Pa. Superior Ct. 344; Commonwealth v. Bober, 59 Pa. Superior Ct. 573; Commonwealth v. Hoskins, 60 Pa. Superior Ct. 230; Commonwealth v. Holgate, 63 Pa. Superior Ct. 246.

I would sustain the third assignment of error, reverse the judgment, and direct a new trial.

KEPHART and TREXLER, JJ., join in the dissent.