# Commonwealth *v.* McDonald, Appellant.

*Criminal law — Leasing dwelling for immoral purposes — Evidence—Sufficiency.*

On the trial for an indictment for leasing a dwelling for immoral and illegal purposes, where the defense set up was that the transaction was not a leasing but a sale to the person in possession under an agreement of sale providing for the payment of the purchase money in installments, and there was evidence that the agreement of sale was a mere subterfuge for a lease and was made in order to protect the defendant from criminal liability, the case is for the jury to determine the good faith of the transaction and a verdict of guilty will be sustained.

Argued October 13, 1919.   Appeal, No. 30, April T., 1920, by defendant, from judgment of Q. S. Beaver County, March Sess., 1919, No. 34, on verdict of guilty in the case of Commonwealth v. A. L. McDonald.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ. Affirmed.

Indictment for leasing a house for immoral purposes. Before BALDWIN, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed.   Defendant appealed.

*Errors assigned* were the charge of the court and the refusal to direct a verdict in favor of the defendant.

*Harold Reed,* of *Reed & Reed,* and with him *Harry W. Leonard,* for appellant.

*W. A. McConnell,* and with him *Frank H. Laird* and *Louis E. Graham,* District Attorney, for appellee.

OPINION BY ORLADY, P. J., February 28, 1920:

The substantial matter in controversy on the trial below was the validity of an article of agreement between the defendant and one Gertrude Bookrum.   It is in the usual form of an agreement of sale of real estate, in which is recited the purchase money to be paid with the terms of the payment, the description of the property with the right to occupy the described premises until the purchase money is paid in full.   It is signed by the parties, and it was alleged to be delivered in the presence of a witness who was called on the trial.   So far as the writing is concerned, all the forms of law were observed. It was described by the court as follows: "It is more than a lease, and if it was executed and delivered by the defendant for the purpose of passing title to these

premises, then the defendant cannot be convicted under this indictment.   On the other hand, if you believe from the testimony that this article of agreement was not entered into by the parties in good faith, but was simply a device, scheme or subterfuge to conceal the real nature of the transaction—was a leasing or letting by the defendant—then this article of agreement is ineffective to show a sale from the defendant."

The testimony was fairly reviewed by the trial judge, and the jury was instructed that "if the proceeding was open and above board and the sale was made honestly and in good faith, the defendant should be acquitted." And further, "That if the defendant, on acquiring knowledge of the use to which the premises were put, after he had leased them he would not be guilty."  And, "You must find that when he leased the premises, if you find he did lease them, he knew the purpose she intended in leasing them, and that if the surroundings and circumstances gave him knowledge of the fact that she was going to use the premises for the defined purposes, the defendant is guilty."

The contention of the Commonwealth was, that the article of agreement was manufactured by the defendant as a mere ruse and device, long after the guilt of the defendant was fixed by the acts of the occupant of the premises, which were notorious and within the personal knowledge of the defendant.   The physical condition of the paper shows that it was freshly made, without any suggestion of age or handling, and was produced by the defendant and not the alleged lessee.   The real character of this writing was purely a question of fact to be solved by a jury.

The clearly established facts in the case show, that the premises had been for a number of months frequented by persons of not only bad, but notorious reputation. White and colored, native and foreign born were by day and by night its visitors, and from the proven conduct of the inmates, but one reasonable inference could be

drawn, to wit: that it was a common bawdyhouse, and as well, that the defendant must have known that the place was a well-known immoral resort. The defense interposed was substantially the same as that in Com. v. Berney, 262 Pa. 174, to wit:. That it was not a leasing, but a sale of the property. That the transaction was evidenced by writing, and on its face showed a sale upon installments. The Commonwealth contended in that, as in this case, that the papers evidencing the transaction, were so drawn as to conceal the true import, for the purpose of escaping detection and prosecution by making what was nothing but a lease appear as a sale. It was there held to be a matter for the consideration of the jury, whether or not the writing was executed in good faith, or a general scheme the whole controversy revolved, and the disputed facts were submitted to the jury. We follow the rule there indicated in disposing of this appeal. The first assignment of error is so clearly in violation of our rules, as embracing many instead of a single subject, that it is not considered. While the charge of the court as a whole is assigned for error, there is but one criticism and that, the one herein referred to as effecting the validity of the lease. The third, that the court erred in refusing to direct the defendant's acquittal, could not be considered under any circumstances, in the light of the testimony.

The judgment is affirmed. The record is remitted, and it is ordered that the appellant appear at such time as he may be called and that he be by that court committed until he has complied with the sentence or any part of it that had not been performed at the time this appeal became a supersedeas.

LINN, J., did not sit.