## Commonwealth *v.* Smith et al., Appellants.

*Criminal law—Gaming houses—Evidence—Employment of detectives to secure evidence—After discovered evidence as the ground for a new trial.*

On the trial of a joint indictment charging defendants with setting up and establishing a gambling house, the defense advanced was that the defendants had sublet the alleged gambling room to a third party. The Commonwealth introduced evidence that the lease was a mere subterfuge and was made to protect the defendants from criminal liability.

Under such circumstances the case was for the jury to determine the good faith of the transaction and a verdict of guilty will be sustained.

The character of the house, so set up or maintained, may be shown by specific instances of gambling committed therein.

Public authorities are justified in employing detectives or other persons, acting in good faith under their direction, to secure evidence in furtive crimes and misdemeanors.

Argued October 11, 1926. Appeals Nos. 34 and 35, April T., 1927, by defendants, from decree of Q. S. Beaver County, March Sessions, 1926, No. 79, in the case of Commonwealth v. Thomas F. Smith et al. Appeal of Thomas F. Smith, and Commonwealth v. Thomas F. Smith et al. Appeal of Robert H. Parris. Before PORTER, HENDERSON, TREXLER, KELLER, LINN, and CUNNINGHAM, JJ.    Affirmed.

Indictment for setting up and establishing a gambling house.  Before Reader, P. J.

The facts are stated in the opinion of the Superior Court.

Verdicts of guilty on which judgments of sentence were passed.  Defendants appealed.

*Errors assigned* were, among others, the various rulings on evidence and the charge of the court.

*D. A. Nelson, of Nelson and Nelson,* for appellant.

*Richard S. Holt,* and with him *J. Blaine McGoun, District Attorney,* for appellee.

Opinion by Keller, J., November 17, 1926:

These appellants were jointly charged with setting up and establishing a gambling house in the borough of Midland.  They have taken separate appeals from the sentences imposed upon them respectively following their conviction.  Their chief ground of complaint on appeal seems to be that the court below allowed testimony to be received that gambling had been carried on upon their premises on more than one date or time; contending that this was a violation of the well-established rule that evidence of a distinct crime, unconnected with that laid in the indictment, cannot be received against a defendant on trial.  But the evidence here complained of is not a violation of that rule.  Gaming houses, as well as bawdy houses, were public nuisances at common law (4 Blackstone's Comm. 167.) and the charge of setting up, establishing or maintaining them was of a continuing character:  27 Corpus Juris 1012, secs. 171, 173; Underhill's Crim. Evidence, sec. 694, p. 929.  In such cases, the character of the house so set up or maintained may be shown by specific instances of gambling or prostitution respectively, committed therein:  1 Wigmore on Evidence, secs.

202-204 (2nd Ed.). In Clark v. Periam, 2 Atkyns 337, Lord Hardwicke said: ''Suppose in the case of an indictment for keeping a common bawdy-house, without charging any particular fact; though the charge is general, yet at the trial you may give in evidence particular facts and the particular time of doing them; the same rule as to keeping a common gaming-house.'' The principle has frequently been recognized in the trial of persons accused of keeping a bawdy-house: Com. v. Murr, 7 Pa. Superior Ct. 391; Com. v. Sarves, 17 Pa. Superior Ct. 407; Com. v. Brink, 49 Pa. Superior Ct. 620; Com. v. Hay, 80 Pa. Superior Ct. 503; and President Judge PORTER pointed out in the recent case of Com. v. Ciccone, 85 Pa. Superior Ct. 316, 319, that there was no difference in this respect between prosecutions for keeping a bawdy-house and for maintaining a gambling house. At the trial of this case counsel for defendants apparently held the same view for they entered no objection to the admission of the evidence on the ground now complained of and in their second point asked the court to charge that a single act of gaming was not sufficient to convict a person of setting up a gaming house. We find no merit in the first, second, third, seventh, eighth and ninth assignments of error.

One of the defenses set up on the trial by these appellants was that they were not in charge or control of the alleged gambling room when the raid was made on February 25, 1926, but had leased it on February 1, 1926 to John Sykes and Charles Hardison, who alone were responsible for it thereafter; and in support of their testimony a lease was produced from the defendants to Sykes and Hardison. It was undisputed that the defendants were the lessees of the entire building and that they operated a barber shop and pool room on the first floor; but they contended that on February 1, 1926 they had sublet the basement room where the alleged gambling had been carried on and hence were not

connected with it on the night of the raid. A number of circumstances cast doubt on this story. In the first place it was alleged that the paper itself when produced in court on March 25, 1926, gave evidence of very recent preparation; the stories of the defendants and Sykes as to its preparation and execution did not agree in some important particulars; entrance to the basement room was still had only through the defendants' barber shop and pool room, instead of directly from the hallway, the door leading to it from the front hallway remaining bolted from the inside; an electric buzzer wired from the barber shop to the room beneath was left in working order and was used, apparently, to notify persons in the basement room of the approach of the police, when the raid was made on February 25; there was no evidence of Sykes or Hardison being seen in or about the room after the date of the alleged lease, or before or at the time of the raid, while there was evidence that the defendants were in the room from time to time and they seemed to be on watch at the entrance to the basement when the raid was made. The real estate agent who drew the lease was not produced in court. It was testified that the defendant Smith furnished to some of the persons arrested on the night of the raid the "forfeit money" required to secure their release. In view of all these circumstances we are not satisfied that the contention of the Commonwealth that the alleged lease was not made bona fide but was a ruse to conceal the defendants' connection with the gambling room was wholly without support or that the court below erred in leaving the question of the bona fides of the lease to the jury: Com. v. McDonald, 73 Pa. Superior Ct. 341; Com. v. Berney, 66 Pa. Superior Ct. 434, 436, affirmed 262 Pa. 174. It is not open to doubt that the bona fides of the instrument may be attacked by circumstantial no less than by direct evidence. The fifth and sixth assignments are overruled.

The quotation in the charge, specified for error in the tenth assignment, which related to the employment by the chief of police of two men to go into the gambling room and secure evidence for the Commonwealth, was but a figurative statement of the proposition that the public authorities are justified in employing detectives or other persons acting in good faith under their direction to secure evidence in furtive crimes and misdemeanors such as this one. We are not satisfied that it had any more effect on the jury than a plain statement of the proposition would have had. The rule that such persons acting in good faith under the direction of the public authorities are not to be regarded as accomplices (State v. McKean, 36 Iowa 343; Com. v. Downing, 4 Gray (Mass.) 29; Campbell v. Com., 84 Pa. 187, 197, 198; 4 Wigmore on Evidence 2060 (d) (2nd Ed.), supports the legal position of the trial judge. The assignment is overruled.

We have repeatedly ruled that we will not reverse the court below for refusing a new trial on the ground of after discovered evidence except for a clear abuse of discretion. The applicable rules were summarized in Com. v. Mellon, 81 Pa. Superior Ct. 20, 25, as follows: "To entitle a defendant to a new trial on this ground the evidence must have been discovered since the trial, and be such as could not have been obtained at the trial by the use of reasonable diligence; it must not be simply corroborative or cumulative, or merely to impeach the credibility of a witness; and it must be such as would likely result in a different verdict if a new trial were granted: Com. v. Brady, 76 Pa. Superior Ct. 488; Com. v. Carter, 272 Pa. 551; Com. v. Flanagan, 7 W. & S. 415. Such an application is not governed by the strict technical rules applicable to a writ of error, but is addressed to the sound discretion of the court: Boyd v. Boyd, 1 Watts 365, 366; and the exercise of this discretion by the court in refusing a new trial will be reversed on appeal only where it has

been clearly abused: Com. v. Hine, 213 Pa. 97.'' We are not satisfied after a review of the depositions filed in this case that the court below abused the discretion committed to it in this respect. Assignments eleven, twelve, thirteen, fourteen, fifteen, sixteen and seventeen are overruled.

It is not necessary to discuss the remaining assignments at length. The charge of the court was not, in our opinion, misleading, prejudicial or biased but fairly presented the issues involved in the light of the evidence, and the defendants have no just ground of complaint arising out of it. We find no reversible error in any of the assignments. They are all overruled.

The judgments are affirmed and it is ordered that the defendants severally appear in the court below at such time as they may be there called and that they be by that court committed until they have complied with their respective sentences or any part thereof which had not been performed at the time the several orders of supersedeas were entered in these appeals.