Commonwealth of Pennsylvania *v.* Shultz, Appellant.

Argued September 25, 1933. Be-
fore Keller, Cunningham, Baldrige, Stadtfeld,
Parker and James, JJ.

*Challen W. Waychoff*, and with him *W. Robert Thompson* of *Waychoff and Thompson* and *T. H. Shannon*, for appellant.

*J. Ernest Isherwood*, Special Assistant District Attorney, and with him *James W. Hawkins*, District Attorney, for appellee.

OPINION BY JAMES, J., February 1, 1934:

Defendant was indicted for having on the first day of April, 1932 and on the first day of each succeeding month, including February 1, 1933, by his agent, Mrs. Elizabeth Shultz, unlawfully let and demised two rooms in a house at 195 South Richhill Street, Waynesburg, to William A. Moore, knowing that said rooms were to be occupied by one Alice Fonner, and to be kept by her as a common bawdy house. Defendant was convicted and now appeals from a refusal of a new trial and refusal to grant defendant's motion in arrest of judgment.

The third assignment of error raises the question of the improper remarks of private counsel assisting the district attorney who, during his closing address to the jury, used the following language: "There are a good many decent respectable men and women in Waynesburg who are watching what you will do with this case." Counsel for defendant objected to the

statement as improper and moved to withdraw a juror and continue the case. The court overruled the objection and stated, "The jury are to be governed by the evidence in this case and by their oath and are not to be affected by public opinion in any way, and counsel shall make no further reference to that in his argument, and the jury can disregard what he said about it." The matter was not again referred to.

Remarks made by a district attorney which tend to prejudice, inflame or unfairly appeal to the minds of a jury have been the subject of a great deal of discussion in the decisions of our courts. Undoubtedly, the remarks of the district attorney in the present case were an unjustified appeal to the minds of the jurors to be governed and swayed in their judgment by public opinion but in an examination of the many cases in which the question of improper remarks has been raised, we find many instances in which equally objectionable language has been held not to require reversal, particularly where, as in the instant case, the court has cautioned the jury not to be influenced by the improper remarks.

Each case must be decided upon its own facts. Remarks which may be regarded in one case as justifying a new trial will not be regarded as controlling in another case. "The effect of such remarks depends largely upon the atmosphere of the trial and the proper action to be taken in such case is largely a matter for the discretion of the presiding judge." Com. v. Del Giorno, 303 Pa. 509, 519, 154 A. 786. See opinion of Judge KELLER in Com. v. Wilcox, 112 Pa. Superior Ct. 240. We find no abuse of discretion in the present case in the refusal of a new trial for the improper remarks.

The first, second, fourth, fifth and sixth assignments of error raise the following question as set forth in appellant's paper book: "Is a person guilty of leasing

a bawdy house within the meaning of the Act of March 31, 1860, P. L. 382, Section 43, where he fails to interfere with a lease of rooms on his property which lease was made by his wife without knowledge on his part of the leasing or of the purpose for which the rooms were rented but which were in fact used for purposes of prostitution, the circumstances being such as might make him chargeable with knowledge of the practice subsequent to the original renting thereof?"

The testimony shows that defendant was the owner of a property located at 195 South Richhill Street in the Borough of Waynesburg; that on or about the first day of April, 1932, Mrs. Elizabeth Shultz, wife of the defendant, rented two rooms in that house to one William A. Moore, and that William A. Moore moved a girl by the name of Alice Fonner in to the house; that Moore had illicit sexual relations with Alice Fonner; that said Alice Fonner, during the period of her stay there had promiscuous relations with other men from April 1, 1932 until the date of the arrest on February 16, 1933, some of whom were brought to Alice Fonner's room by Mrs. Shultz; that the two rooms rented to William A. Moore were immediately adjacent to and were a part of the building occupied by the defendant and his wife, and entrance was had to defendants' dining room from Alice Fonner's bedroom; that during the period of time the rooms were occupied by Alice Fonner the defendant had knowledge of the leasing of the rooms and knowledge of the presence of Alice Fonner in those rooms; that defendant negotiated the sale of some furniture to Moore and had at one time arranged for the placing of a commode in the room used by Alice Fonner as a bedroom, and had sold a stove to be used on these premises to Mr. Moore. In addition, the testimony showed illicit relations on the part of the defendant with Alice Fonner in his own home and in a club house

in another section of the town. Defendant denied that the premises were a common bawdy house and stated that if there was any violation committed he did not know anything about it, and that he did not authorize his wife to rent or use any part of his dwelling for immoral purposes.

The case was submitted to the jury on the theory of the Commonwealth as set forth in the charge of the court: "The theory of the Commonwealth as I already explained, the degree in which it was carried on there, the amount of disturbance in the neighborhood, the knowledge that the defendant had of the furniture and the location of Alice Fonner's room, and Mr. Moore living there with her, must have affected him with knowledge. If he didn't know at first when she leased the rooms that Alice Fonner maintained a place of prostitution, that he should have known subsequently that the lease was made from month to month and it was his duty as head of the household to see that those rooms were not leased even by his wife for that purpose." Although it was charged in the indictment that the defendant did, by his agent, Mrs. Elizabeth Shultz, unlawfully let and demise the rooms in question, to which indictment no objection was made, the case was tried by the Commonwealth on the theory that although he may not have had any participation in the original leasing of the rooms by his wife, he permitted these rooms to be occupied for the unlawful purpose for a period of eleven months, coupled with his actual participation in the furnishing of the rooms and of the other circumstances narrated, and was sufficient from which the jury could infer that the continued leasing of the premises by his wife was done with the knowledge and connivance of the defendant husband.

Special complaint is made by appellant of the use of the language "head of the house" as used by the

court in its charge, as follows: "Of course, the husband is the head of the house. He should know within a reasonable degree what goes on within his own premises, and it is for you to determine whether or not he did know, whether or not those rooms were leased by his wife for immoral purposes from month to month with his knowledge and consent, and to that extent whether she was acting as his agent." The expression "head of the house" was not used in the sense that the husband as head of the house was responsible for all of the acts of his wife without any guilty knowledge on his part. In answer to the second point submitted by the defendant, which is as follows: "The management and conduct of a household in the absence of the husband is primarily the part of the wife and the jury is not to presume that because defendant owned the house he is guilty of the crime charged," the court replied, "That point is correct and is affirmed. In other words, if Mr. Shultz did not know that his wife was leasing the house for immoral purposes, and receiving pay for it, and did not connive and agree she might do it and receive the pay, then he would be not guilty. All these things are for the jury, and they arrive at their conclusions and reach and determine the facts in this case from what they heard out of the mouths of the witnesses on the witness stand, applying to it your knowledge and experience as human beings, being acquainted with the way human beings act under certain circumstances, and determine whether the defendant is guilty or not guilty."

Section 43 of the Act of March 31, 1860, P. L. 382 (18 PS 591) provides: "If any person shall ......, knowingly, let or demise a house, or part thereof," and the "knowingly, let or demise" as set forth in the act can bear no other interpretation than that a landlord can not knowingly permit any person, whether

it be his wife or any other person, ostensibly as his agent, to let or demise his premises to be used as a common bawdy house. As the husband owner of the property he was the head of the house. It was his property and it was his duty and obligation to not knowingly let or demise or permit any other person to let or demise the premises for illicit relations. It was not necessary for the Commonwealth to establish that the original leasing or demise was for illicit purposes yet if, during the course of the many months the premises were used as a common bawdy house, the jury believed defendant had knowledge of such use of the premises, he would be guilty under this indictment as having adopted the act of his wife as his own. The testimony establishes somewhat more than the statement of facts as set forth in appellant's statement of the question involved. Undoubtedly, if the property was leased by his wife without knowledge on his part of the leasing or of the purpose for which the rooms were rented, the defendant would not be guilty under this indictment but the question of his knowledge of the leasing for which the rooms were rented was a question of fact for the jury to determine under all the testimony.

As was said by Judge WILLIAMS in Com. v. Berney, 66 Pa. Superior Ct. 434, 437, (affirmed in 262 Pa. 174), "Courts of justice will never permit an unlawful thing to be done indirectly, and will always look through the form and find the substance, if such substance is the subject of competent proof," and the Commonwealth has a right to question the bona fides of transactions relating to premises in which unlawful acts are being committed. Com. v. Berney, 66 Pa. Superior Ct. 440, (affirmed in 262 Pa. 176); Com. v. McDonald, 73 Pa. Superior Ct. 341; Com. v. Smith et al., 89 Pa. Superior Ct. 190.

We are satisfied that the question of the knowledge

of the defendant in leasing and permitting the premises to be conducted as a bawdy house over the long period of time as the testimony discloses was for the jury.

The assignments of error are overruled and the judgment is affirmed, and it is ordered that the defendant appellant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part thereof which he had not performed at the time this appeal was made a supersedeas.