Opinion by
 

 Kenwobthey, J.,
 

 This is an appeal from a conviction of burglary. Appellant asks us to grant a new trial because (1) the evidence was insufficient to sustain the verdict
 
 [1]
 
 and (2) the court’s charge to the jury was inadequate in that it failed to instruct them on the circumstantial evidence rule.
 

 Frank Mastrangelo, an alien, lived in a small shanty in Mifflin Township, Allegheny County. On August 25, 1940, appellant, a constable, went with a search warrant to Mastrangelo’s place and found an old shotgun, and a .32 revolver. He seized the weapons, placed Mastrangelo under arrest and put him in jail for violating the Alien Firearms Law. Appellant, in making the search and arrest, was accompanied by two companions, Snyder and Conboy.
 
 [2]
 
 The living quarters of Mastrangelo’s shanty consisted of two rooms on the ground
 
 *265
 
 floor. Access to a cellar beneath was through a separate door. The shotgun had been found in the living quarters ; the revolver in the cellar. Throughout the search, appellant had insisted that Mastrangelo had still another weapon, a .38 revolver. Later the same afternoon, appellant went to Mastrangelo at the jail and asked him for the keys so that he could make a further search for it. He was given the keys to the upstairs rooms only. Again, with the two companions, he returned to Mastrangelo’s place. He made a fruitless search upstairs. Finding the
 
 [1]
 
 cellar door padlocked he smashed the padlock with his fist and entered, leaving his companions to stand watch outside. After a while, he emerged from the cellar with two dinner buckets and a sack and said, “I have it.” He dumped the contents of the buckets and sack in a shopping bag, placed the bag in his car and drove off. What did the buckets and sack contain? Admittedly, not a .38 revolver. According to appellant, they contained two bankbooks, a dollar bill, some change, a check and some receipts for money sent to Italy. These articles were turned over by appellant to the Chief of Police. But, according to Mastrangelo, they contained over $1,000 in cash.
 

 There was no direct proof appellant knew or had any reason to expect that Mastrangelo had secreted in his home any such sums of money. None of the money was ever found on appellant or traced to him. And there was no direct evidence appellant stole the money.
 

 The Act of June 24, 1939, P. L. 872, Sec. 901, 18 PS 4901, provides: “Whoever, at any time, wilfully and maliciously enters any building, with intent to commit any felony therein, is guilty of burglary.” Ordinarily if a man breaks into a house or building, the felonious intent may be inferred from his conduct.
 
 Commonwealth v. Stefanczyk,
 
 77 Pa. Superior Ct. 27. The Commonwealth’s theory is that when appellant emerged from the cellar with the buckets and sack and said, “I have it,” since he did not have a .38 revolver, he
 
 *266
 
 must have been looking for something else. And since, according to Mastrangelo’s testimony, he stole $1,000 the inference is that was what he was looking for. But the case must be viewed in the light of the peculiar facts. Appellant had a limited right to enter Mastrangelo’s premises. True, he had no right to break into the cellar, and he had no fight to take anything but firearms. His conduct was, perhaps, reprehensible. But he may have thought the bankbooks, check and receipts were evidence which might lead to the detection of other crimes. And he didn’t steal them; he turned them over to the police. If all he intended to do wa$ to look for and take this other evidence, whatever else might be said of his conduct, it didn’t amount to burglary. And there are other circumstances which point to a lack of the felonious intent. If he had it in mind to steal, why did he return to the shack in broad daylight instead of waiting a few hours for darkness? Why did he take along two companions who were not let in on his scheme and who were, therefore, potential witnesses against him? Why did he act in the plain view of three other witnesses
 
 [3]
 
 who he knew were watching him? Why didn’t he take the money and leave the receptacles which supposedly contained it? A guilty man would normally try to avoid being discovered with the container of money he had stolen. A murderer would not ordinarily stick the lethal revolver in his pocket and walk off to be apprehended with it in his possession. And why didn’t he take the $1 and change along with the rest of the money?
 

 In our view there was not sufficient proof of the intent to commit a felony at the time of entry, whether or not appellant stole the money. There is nothing to indicate — assuming he did steal it — that the idea of stealing or of committing any other felony was not
 
 *267
 
 formulated sometime after the entry was completed. At most the evidence would sustain a conviction of larceny.
 

 The judgment is reversed with a venire facias de novo.
 

 [1]
 

 Since no point for binding instructions was submitted, our only remedy would be to grant a new trial.
 
 Commonwealth v. Klein,
 
 91 Pa. Superior Ct. 566.
 

 [2]
 

 They were tried with appellant and acquitted.
 

 [3]
 

 Two of these witnesses testified for the Commonwealth and the third died before the trial: