## Commonwealth *v.* Ellis, Appellant.

Argued November 16, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, HIRT, KENWORTHEY and RENO, JJ. (RHODES, J., absent).

228

*William T. Connor,* with him *John R. K. Scott,* for appellant.

*Edwin P. Young,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., January 27, 1944:

The defendant, Robert A. Ellis, was convicted under an indictment charging burglary. No motion was made for a new trial but after sentence was imposed the defendant appealed. The indictment was drawn under the Act of 1939, June 24, P. L. 872, §901, 18 PS §4901, which provides: "Whoever, at any time, wilfully and maliciously, enters any building, with intent to commit any felony therein, is guilty of burglary, a felony, and upon conviction thereof, shall be sentenced to pay a fine not exceeding ten thousand dollars ($10,000), or to undergo imprisonment, by separate or solitary confinement at labor, not exceeding twenty (20) years, or both."

Mrs. Bessie Charland, who resides on Hawes Street in North Towanda, testified that about 1:30 A. M. on August 10, 1943, she was alone in her bedroom, which is on the first floor of her home, when she saw Robert Ellis, whom she knew and had talked to several times on previous occasions, break her bedroom window with his fist. She asked him what he wanted and told him to go away or she would have him arrested. He said that he wasn't afraid and when she inquired why he was there he replied: "What do you care?" She then

went over to Mr. Calkin's home, which is but three feet distant from her house, and the defendant followed her over as far as the porch. He went back to Mrs. Charland's house and she saw him enter her front door, which leads to a dining room where there was a light burning. Police officers were called from the Calkin's but when they arrived the defendant had left. He was arrested the following afternoon.

Mrs. Charland was positive that she recognized Ellis, who wore a soldier's uniform. Ellis testified he did not remember what clothes he had on that night. Frank Krause, who was in company with Ellis that evening in several drinking places, and Anna Weiss, the proprietress of Maple Leaf Inn, one of the taprooms they visited, both corroborated Mrs. Charland's statement respecting the uniform.

Ellis attempted to set up an alibi as a defense. He testified that he was not in the neighborhood of Mrs. Charland's house on the evening in question. Krause, his companion, called by the commonwealth, testified that after they left the "Maple Leaf" about 11:30 P. M. in his car and went through Towanda to North Towanda, the defendant got out of the car north of the "Highway Building", which is in the immediate locality of Mrs. Charland's house, and he, Krause, then drove away and did not see Ellis thereafter.

While it is true that there was no direct evidence of the defendant's intent, that was not necessary. Intent can be inferred from actions as well as words. The jury was entirely justified in concluding that the defendant was in the Charland house and that his suspicious conduct at that early hour in the morning when Mrs. Charland was alone in her home, showed that he intended to commit a felony. The facts in the case of *Commonwealth v. Hartland*, 147 Pa. Superior Ct. 263, 24 A. 2d 160, principally relied upon by the appellant, are quite different from those before us. All the de-

fendant's acts there were done in broad daylight in plain view of three other witnesses whom the defendant knew were watching him. The evidence showed clearly a lack of any intent to commit a crime.

The second assignment of error relates to the court's charge on the question of "reasonable doubt," which was in the following language: "A reasonable doubt is defined by our Supreme Court as follows: 'If, in an endeavor to determine from the evidence any point essential to the Commonwealth's case, the juror hesitates as between two conclusions and finds himself thinking, as to one of them, "Such is, or may be, the fact," and then is mentally reluctant to so conclude, and, after considering the evidence from all angles, such hesitancy still persists, that is what the law terms a reasonable doubt, and the defendant is entitled to the benefit of it.'" We find nothing objectionable in that instruction. When the jury was instructed that they must "determine from the evidence any point essential to the Commonwealth's case" their consideration was not confined to the commonwealth's evidence. Due regard was to be given to all of the evidence. Moreover, the instructions were in the exact language approved by the Supreme Court in *Commonwealth v. Green*, 292 Pa. 579, 590, 141 A. 624.

The next assignment of error is directed to the court's charge respecting the defense of an alibi. The court's instructions on that question were as follows: "Members of the Jury, the defendant sets up here what is known in law as an alibi, that is that the defendant was not at the place where the crime was committed and therefore could not be guilty. In setting up an alibi as a defense the burden is on the defendant to establish that alibi by the weight or preponderance of evidence. He is not required to establish it beyond a reasonable doubt, but simply by the weight or preponderance of the evidence, and if so established it

is a complete defense and your verdict would be not guilty."

This was a specific instruction as to the quantum of proof required for a defendant to establish an alibi. Attention was called to the fact that he was not required to convince the jury beyond a reasonable doubt but only by the weight and preponderance of the evidence, thus carefully differentiating between the burden resting upon the commonwealth to establish guilt and that resting upon the defendant to set up an alibi. Mr. Justice STERN said in *Commonwealth v. Jordan*, 328 Pa. 439, 446, 196 A. 10: "The law is firmly established that the measure of proof required for the defense of alibi is merely a preponderance of the evidence, or, as it is sometimes stated, proof 'to the satisfaction of the jury.'" That is exactly the degree of persuasion the trial judge in this case instructed the jury was required. This case is readily distinguishable from *Commonwealth v. Andrews*, 234 Pa. 597, 83 A. 412, and the other cases cited by the appellant.

A careful review of this evidence convinces us that there was no reason, and fails to disclose any error, that warrants our interference with the finding of the jury and the sentence thereafter imposed.

The judgment is affirmed, and it is ordered that the appellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.

DISSENTING OPINION BY KENWORTHEY, J.:

About one-thirty in the morning of August 10, 1943, appellant appeared at the window of the first floor bedroom of Mrs. Charland. There was testimony that earlier in the evening he had done a considerable amount of drinking. Appellant and Mrs. Charland were ac-

quainted; she testified, "Well, I have talked with him a few times and was introduced to him"; she had seen "him at drinking establishments in town when [she was] there"; she referred to him as "Bobby." It is not clear what he did when he first appeared at the window, but at some point in the course of events he broke the lower pane of the window with his fist. After that Mrs. Charland had some conversation with him in which she tried to persuade him to go away. When she realized she would not be successful, she went next door to the home of Mr. Calkins for the purpose of calling the police. While standing on Mr. Calkins' porch, she saw appellant enter her house through the front door which she had left open. Shortly thereafter she saw him leave by the same portal.

There is no evidence that appellant committed any overt act to molest Mrs. Charland; after breaking the window, he apparently made no attempt to enter the bedroom through it. He made no threat and no statement of an intention to molest her. She testified she was frightened by him "because I didn't know what he was after me for." In her conversation with him, apparently through the broken window pane, she asked him "what he was there for," and he said: " 'What do you care?' "

Although the Penal Code (Act of June 24, 1939, P. L. 872, §901, 18 PS §4901) has very much broadened its definition, to constitute burglary the entry must be made with the intent to commit a felony. We assume it to have been the commonwealth's theory, because it was on that basis the court submitted the case to the jury, that appellant entered with intent to commit either larceny or rape.

To my mind the notion that he intended to commit larceny is completely negatived by the fact that he entered the house in the plain view of Mrs. Charland, who was standing within a few feet of him, and the

fact that he emerged shortly thereafter without taking anything. See *Com. v. Hartland,* 147 Pa. Superior Ct. 263, 24 A. (2d) 160. Regardless of whatever else may be inferred as to the purpose of his visit, it is eminently clear he came to see her, not to steal her property.

When Mrs. Charland left her house by the front door, apparently appellant followed her. She testified that while she was on Calkins' porch appellant "came after me." He apparently changed his mind and decided to enter her house. But how can it be said that he entered with intent to commit rape when he knew that the supposed object of his intentions was standing on the porch of the house next door? He, of course, had no business being on Mrs. Charland's property; since he was uninvited he was a trespasser. When he broke the window, he also violated the law. It is a permissible inference he intended to make improper advances toward Mrs. Charland; he was at least seeking an unwelcome companionship. But, unless I permit myself to be carried away by the horror of the hovering menace of the all too frequently committed sex felonies and the natural impulse to do everything possible to prevent them, I cannot find anything in this record from which it could be inferred, beyond a reasonable doubt, that appellant entered the house with intent to commit rape.

I would reverse the conviction.

RENO, J., joins in the dissent.