MONNIE RETTIG v. THE STATE.

No. 6329.   Decided June 22, 1921.

Rehearing Denied October 12, 1921.

1.—Assault to Rape—Evidence—Physical Facts.

Where, upon trial of assault with intent to rape, a State's witness was permitted to testify for the State, describing the condition of the ground, grass, and underbrush where the alleged assault occurred, to which defendant objected that no one had pointed out to witness the place, and that there was no sufficient evidence that the place witness described was in fact the scene of the alleged offense, but the record on appeal showed that the witness followed the tracks of the parties across the field, and there found the place he described, and this in connection with the description given by the party assaulted, fixed the location, there was no reversible error.

2.—Same—Motion to Examine Prosecutrix—Practice in Trial Court.

Where prosecutrix had denied that she had ever had intercourse with defendant or any other man, and thereupon the attorney for the defendant requested the court to appoint three reputable physicians to examine her as to whether she had ever engaged in sexual intercourse, which motion the court refused, there was no reversible error, as the prosecutrix could not be subjected to such examination by the order of the court.

3.—Same—Intent to Rape—Aggravated Assault.

Where, upon trial of assault with intent to rape, the evidence clearly showed that it was defendant's intent to have carnal intercourse with the prosecutrix by force, there was no error in refusing a requested charge upon aggravated assault.

4.—Same—Newly Discovered Evidence.

Where the motion for new trial on the ground of newly discovered evidence disclosed that the alleged testimony was either hearsay or of an impeaching character, there was no error in overruling the same. Following Williams v. State, 45 S. W. Rep., 572, and other cases.

5.—Same—Argument of Counsel.

Where, upon trial of assault with intent to rape, the district attorney, in making his closing argument for the State, said: "Nancy Jordan testified that Harve Johnson knocked her down and raped her," to which there was objection but the record showed that the language was withdrawn by order of the court, and besides the testimony showed a basis for the argument there was no reversible error.

6.—Same—Rehearing—Aggravated Assault—Intent.

Where appellant insisted on motion for rehearing that the court should have charged upon aggravated assault, and relied upon the case of McCullough

v. State, 47 S. W. Rep., 990, but the record showed that the facts in that case were entirely diff.rent from the instant case, the same is not applicable to the facts of the instant case, and the motion is overruled. Distinguishing McCullough v. State, 47 S. W. Rep., 990.

Appeal from the District Court of Rusk. Tried below before the Honorable Charles L. Brachfield.

Appeal from a conviction of assault with intent to rape; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*R. T. Jones,* for appellant.—Cited: McCullough v. State, 47 S. W. Rep., 990.

*R. H. Hamilton,* Assistant Attorney General, for the State.—On question of tracks: Campbell v. State, 15 Tex. Crim. App., 506; Rucker v. State, 51 Texas Crim. Rep., 222; Burch v. State, 49 id., 13.

On question of intent; Steiner v. State, 37 Texas Crim. Rep., 291, Blount v. State, 34 id., 640.

HAWKINS, JUDGE.—Conviction was for assault with intent to rape Allie Jordan, alleged to have been committed on or about the 16th day of April, 1919, and punishment was assessed at three years confinement in the penitentiary.

Allie Jordan and her sister Nancy were negro girls, and upon the day of the alleged offense had been washing for the family of Mr. Sam McKnight. About one-thirty o'clock in the afternoon they finished their work and started home, going through the fields. When about two hundred yards from McNight's place they met two negro men, the appellant in this case, Monnie Rettig, and Harvey Johnson. According to the testimony of the two girls, both the negroes were armed with pistols, and with the pistols displayed, ordered the two girls across the field and into a strip of woods. This point was about three hundred yards from the home of W. B. Harvey. Allie Jordan says that at this point the appellant threw her down, pulled up her clothes, pulled out his male person and was getting on top of her; that she was struggling all the time, and that her sister got a stick and began to beat him, and that between her efforts and the efforts of her sister she got away from the appellant and ran towards Mr. Harvey's house; that about the time she got loose from appellant Harvey Johnson caught hold of her sister and pulled her off to one side; that she, Allie, went to Mr. Harvey's house and reported to him that a negro man was ruining her sister, and wanted him to go down and help her. She claims when she got loose from appellant he shot at her and told her if she did not come back he would shoot her God-damn head off. The testimony of Nancy Jordan is substantially the same. She claims that after Harvey Johnson took her away from where she was beating appellant that he, Johnson,

made an assault on her; that Allie got loose from the appellant by her help. She claims to have holloed for help and says that Johnson got her down and got on her head and told her he would beat her God-damn brains out. She further says that Mr. Harvey and another party came to where she was, and that Johnson was on top of her when they got there. This witness also says that appellant fired one shot after Allie had got away from him and run off. W. B. Harvey testified that Allie Jordan came to his house crying on the evening in question and wanted him to go make Harvey Johnson turn her sister loose. He saw the appellant going through the field to the big road as Allie Jordan was coming through the field, and saw him get within a short distance of her, and he seemed to be saying something to her but does not know what it was; that she did not stop or have any conversation with him. This witness went to where Nancy Jordan and Harvey Johnson were and described the condition of the ground and grass as being wallowed down, as though there had been tussling or fighting. Appellant did not testify himself, but offered evidence to the effect that he and Allie Jordan had been exchanging letters, which was admitted by her; and showed by one witness that upon the day in question a note had been carried to her while she was at Mr. McKnight's place, and that in reply to the note she had told the messenger to telephone appellant and tell him "alright." She admits getting the note while she was at McKnight's, but disclaims having sent any message of any kind to the appellant. She also denied that there had ever been any improper relations between her and appellant, but admitted that they were sweethearts, and that she had been writing to him and he to her for some time. The foregoing is a sufficient statement of the facts, without going further into details.

Complaint is made that Mr. Sam McKnight was permitted to testify for the State describing the condition of the ground, grass and underbrush where the alleged assault occurred, the objection being that no one pointed out to him the place, and that there is no sufficient evidence that the place he described was in fact the scene of the alleged offense. When we look to the record we find that the two Jordan girls had been washing for McKnight's family the day of the alleged offense. Mr. McKnight and his wife were in town when it occurred, and heard about it on their return home. He says the girls came and told the whole thing; that where the girls told him they first talked to them (the negro men) was at a little branch near his (witness) house. That he went the direction they said it occurred, and there were the tracks across the field, the two girls' tracks close together, and the tracks of the two men. That he followed the tracks across to the next hollow, and there found the place he described. When we take the description of the girls as to their first meeting with the men, and their movements afterwards, and the location of the place of the assault it leaves no doubt but that the witness was describing the same place mentioned by the girls, and we think no error in this respect is disclosed.

While Allie Jordan was testifying, and in response to questions by appellant's attorney, she denied that she had been meeting appellant and having intercourse with him, and asserted that she had never had intercourse with any man. Appellant's attorney then requested the court to appoint three reputable physicians to examine her, asserting that if such examination revealed that she was not virtuous it would support the theory that she had been theretofore indulging in sexual pleasure with appellant, and strongly tend to discredit her testimony, as to the alleged assault. We know of no rule of law that would authorize the trial judge to require a witness to subject herself to such an examination, or any right to enforce such an order, if made.

The court declined to charge upon aggravated assault, and appellant requested a special charge upon that subject, as follows:

"You are further instructed, that under the laws of this state, where an adult male, commits an assault upon the person of a female, under such circumstances which would amount to only a simple assault, were it committed upon another adult male, such assault amounts, under the laws of this state, to an aggravated assault. And it matters not, whether the intention of said adult male in making such assault upon the person of a female, is for the purpose of committing a battery upon the person of such female, or whether the intention of the adult male in making such assault upon the person of such female, is to forcibly and against her consent, take liberties with her person; such as forcibly kissing her or embracing her.

"And in this connection, you are instructed, that if you should believe from the evidence, that the defendant, *Money* Rettig, on the occasion set out in the indictment in this case, he being an adult male, caught hold of the person of the prosecutrix Allie Jordan, she being a female, against her will and consent, and that he used force in so doing, yet if you should further believe from the evidence, that the defendant on such occasion, did not do so for the purpose of forcibly raping or having carnal intercourse with the said Allie Jordan, then you can not find him guilty of an assault with intent to rape, but only of an aggravated assault."

Where the issue is fairly raised by the evidence the court should instruct the jury on aggravated assault, but where the evidence does not raise the issue such charge should not be given. For many cases collated see Branch's Anno. P. C. vol. 2, Sec. 1712. No testimony was offered by appellant as to what occurred at the scene of the alleged offense. He did not testify. Therefore, we must ascertain the facts from the two girls who were present. From their testimony there is left no doubt as to the purpose and extent of the assault, and the intent with which it was made. Nothing in evidence would authorize the conclusion that appellant's outrageous conduct was for any purpose short of a forceable copulation with prosecutrix. His theory, as embraced in the requested charge, that the assault was for

some less culpable reason finds no support in the testimony, and was properly refused.

One error assigned is the failure of the court to grant a new trial on the ground of newly discovered testimony. All of the witnesses from whom such testimony was expected to be elicited were in attendance upon the trial, two of them having testified. There is no claim that they suppressed any information when interrogated about the case. There was simply a failure to ascertain by an investigation what witnesses present knew about the case. The affidavit of two of the witnesses attached to the motion for new trial show their testimony would be inadmissible as it is hearsay, and undertakes to show what another party's opinion was as to whether or not appellant was guilty. The affidavit of the other witness goes only to impeaching testimony against prosecutrix. For the reasons stated above we find no error on the court's part in overruling the motion for new trial, where sought for alleged newly discovered testimony. Williams v. State, 45 S. W. Rep. 572; Powell v. State, 36 Texas Crim. Rep. 377; Halliburton v. State, 34 Texas Crim. Rep. 410.

The appellant, in his fifth bill of exceptions complains that the district attorney, in making his closing argument for the State, said: "Nancy Jordan testified that Harve Johnson knocked her down and raped her." It appears that counsel for appellant at once objected to said remark on the ground that Nancy Jordan had given no such testimony. A controversy seems to have then arisen between the district attorney and the judge as to whether such testimony had been elicited, whereupon, the judge told the district attorney that there had been no such testimony from Nancy Jordan or any one else, and upon request instructed the jury to disregard the argument, and gave a written instruction to the jury to the same effect. If there was any error in the use of such language by the district attorney, the prompt action of the court, in our view, corrected the same, and we believe the bill of exceptions presents no error. Upon an examination of the statement of facts, however, we are not sure that the district attorney went very far afield in drawing the conclusion he seems to have drawn in making the statement complained of. We find that Nancy Jordan did testify that when she was beating the appellant with a stick, undertaking to make him desist from his attack upon her sister, that Harvey Johnson took hold of her and carried her off to one side, and that when she holloed for help Johnson threw her down and got on her head and told her he would beat her Goddamn brains out. Further in her testimony it appears that Harvey Johnson laid his pistol down by his side and she says when Mr. Harvey and Mr. McQuirter got to her that Harvey Johnson was on top of her, and that Johnson remarked "dar, now" and got up. As the matter is presented in the bill of exceptions we think no such error is shown as will require a reversal of the case.

Having considered all matters of which appellant complains, we are constrained to hold that nothing is contained in the record that would authorize the reversal of this case, and the judgment is af- firmed.

*Affirmed.*

ON REHEARING.

October 12, 1921.

HAWKINS, JUDGE.—Appellant insists we were in error in hold- ing that the issue of aggravated assault was not raised by the evi- dence, and that McCullough v. State, 47 S. W. Rep. 990, is decisive of the question. We have again examined the facts of the instant case in the light of the McCullough opinion, and are unable to bring ourselves to the conclusion that it should control in the present case. The learned judge who wrote in the McCullough case did not under- take to set out all the facts, for we find this language: "Other facts in connection with this matter unnecessary to be stated, tend to show that appellant may not, at the time, have entertained the intent to accomplish his purpose at all hazards, but merely that the assault was for the purpose of persuading the prosecutrix to have carnal inter- course with him." No arms were used in that case which would have excited fear. The entire record before that court evidently did not impress them as the facts in the present case appear to us.

Believing the proper disposition was made of the case in our former opinion, the motion for rehearing is overruled.

*Overruled.*