## Commonwealth *v*. English, Appellant.

Argued April 13, 1936.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES
and RHODES, JJ.

*Jay W. Sechler,* for appellant.

*Abraham Berkowitz,* with him *John H. Maurer,* Assistant District Attorneys, and *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY PARKER, J., July 18, 1936:

The defendant, Lawrence P. English, was convicted and sentenced on a charge of fornication and bastardy. On this appeal he urges as reasons for a new trial that the court incorrectly charged the jury as to the weight of evidence with relation to good character and that the court erred in its rulings in connection with a motion of defendant requesting the court to direct the private prosecutor to submit herself and her child for blood grouping tests intended to determine that defendant was not the father of the child.

Two witnesses were called by the defendant and after qualifying to express an opinion they respectively testified that the reputation of defendant for morality and general good conduct was splendid and excellent. The district attorney then stipulated that three other witnesses, if called, would give similar testimony. The court refused to charge on the subject of character evidence as requested by defendant in its second point which was as follows: "2. In considering whether or not this defendant is guilty of the charge brought against him, the jury must consider the evidence as to the defendant's good reputation for morality, and if the jury

finds that the defendant's reputation is of such a character that the jury believes it was unlikely that he would commit the offense charged, the verdict must be in favor of the defendant." The court however did attempt to cover the subject in the general charge where this language was used: "As to the character of the defendant, there is no question about that. It does not necessarily follow that a person of good character will not give way to the passion of another if opportunity offers it...... It is purely a question of whether you believe her story that intercourse did take place on the two occasions as she tells you. If you believe that testimony then you must find the defendant guilty." In addition to this statement of the law, the court made a remark that constituted a serious error and completely negatived the effect of the character evidence. The defendant's second character witness had just completed his direct testimony when the trial judge interposed this remark: "Counsellor, that doesn't enter into it at all." A few moments later the trial judge further said: "Probably in the best majority of these cases where men are charged with fornication and bastardy we would necessarily admit good character. It is just a momentary impulse at times that causes the danger. We haven't any doubt about the character of the man. It is a question of whether he did this particular thing."

The court did not err in refusing defendant's second request for charge, for the latter part of that point is not a correct statement of the law. It requested the court to say that if they found that defendant's reputation was of such character that they believed it was unlikely that defendant did commit the offense, then the verdict must be in favor of defendant. In support of that proposition, counsel for the appellant cites *Com. v. Logan,* 76 Pa. Superior Ct. 167, but that case gives no support to defendant's contention. The objection to the point as phrased by counsel is that it tended to

leave with the jury the impression that they might ignore everything but character evidence in arriving at a verdict and decide the case solely on the character evidence. In the leading case of *Com. v. Andrews,* 234 Pa. 597, 605, 83 A. 412, quoting from *Com. v. Cleary,* 135 Pa. 64, 19 A. 1017, the Supreme Court said: "Evidence of good character is always admissible for the defendant in a criminal case; it is to be weighed and considered in connection with the other evidence in the cause,—it may of itself, in some instances, create the reasonable doubt which would entitle the accused to an acquittal." The extent to which the appellate courts have gone is to say that such evidence is substantive evidence and may create a reasonable doubt which would entitle accused to an acquittal, but they have not said that all other evidence is to be ignored. Counsel, in framing the point, attempted to improve the language of the Supreme Court with the usual result. It is much better to stick to the beaten path.

However, the trial court erred to the same extent. The effect of the charge taken with the remarks to the jury was to minimize if not completely negative the uncontradicted evidence that prior to this charge the defendant bore an excellent reputation for morality. The appellate courts have said again and again that such evidence is substantive evidence and must be considered. The appellee attempts to justify the judgment on the ground that specific exceptions were not taken to the charge but only to the refusal of defendant's point. Not only was the error a fundamental one, but the attention of the court was specially called to the subject by the point in question. As he had a right to do, he attempted to cover the matter in his comments and charge. However, we cannot overlook the error: *Com. v. Andrews,* supra; *Com. v. Stein,* 305 Pa. 567, 571, 158 A. 563; *Com. v. Logan,* supra. In the Stein case a failure to charge as to evidence as to an alibi was held error, although

no specific request was made for instructions on that subject.

The accusation made against the defendant is one that is difficult to defend. The defense here consisted largely of the unsupported denial of the accused with little opportunity for corroborating his testimony by collateral facts. In such cases evidence of good reputation is of special importance if not to establish the innocence of the defendant at least to create a reasonable doubt in the minds of the jury. Such evidence is always admissible and must be considered by the jury. The effect of the remarks of the court during trial and in the charge was to deprive the defendant of the benefit of this testimony.

There are two additional assignments of error not essential to determination of this appeal but which, in view of the fact that they will probably arise on a retrial of the case, should be considered. Each of these assignments involve certain scientific blood tests claimed to have some probative value in determining the paternity of a child. After the jury was sworn defendant presented a written motion to which was appended an affidavit verifying statements of fact contained therein. The motion averred that the defendant desired to have the benefit of scientific evidence bearing on the paternity of the bastard child, which tests are known as the Landsteiner and related tests, to be made of samples of the blood of the complaining witness and of the blood of her infant child. The motion set forth the general nature of these tests and the standing of such proofs as they were considered by the medical profession. The prayer was that the court make an order directing Isabelle Creighton to submit herself and her child for blood grouping tests of their blood and the defendant's blood by or under the supervision of a qualified physician approved by the court, the results of such tests to be admitted in evidence on the question of the defendant's

paternity or non-paternity, and that the court continue the trial of the case pending the taking of such tests. The trial court properly refused the motion. It was not an abuse of discretion to refuse to continue the case after the jury had been sworn: 17 C. J. 1056; 14 R. C. L. 711.

We are however of the opinion that if the petition had been presented earlier it would have been the duty of the court to refuse the motion. It may be assumed that the taking of the necessary blood, only a few drops, from the veins of each, would not ordinarily be accompanied by any serious danger to the health of persons operated on. It is not claimed by appellant or any of the medical authorities that the proposed tests will determine the paternity of the child, but the claim is that in $14\frac{3}{4}\%$ of the cases examined by this method it may be determined with certainty that the child is not the offspring of a particular putative father. In other words, in $14\frac{3}{4}\%$ of the cases examined the blood grouping test can exonerate, but in no case does it incriminate.

The question raised by the third assignment of error is based on the refusal of the trial court to compel the complaining witness to submit her body to a blood test. We are not here concerned with the admissibility of such evidence where the father, mother and child have voluntarily submitted to the tests. The precise question involved is one of first impression in the appellate courts of this state, although there are kindred cases decided here and elsewhere which throw light on the subject, particularly those cases dealing with the right of the defendant to have a surgical examination of a plaintiff in a personal injury case where such examination will throw light upon the question of damages.

At common law the defendant did not have a right to a physical examination of the plaintiff in an action for personal injuries. The common law doctrine still prevails in some jurisdictions particularly the federal courts where the question was finally considered in *Un-*

*ion P. R. Co. v. Botsford,* 141 U. S. 250, 11 S. Ct. 1000, it being there held that the court had no power to order such an examination. The British courts of divorce, deriving their authority from the civil and canon law in spiritual and ecclesiastical courts and not according to the course of common law, exercised the power to order an inspection by surgeons of the person of either party. We also recall the writ de ventre inspiciendo, intended to ascertain whether a woman convicted of a capital crime was quick with child in order to guard against taking the life of an unborn child for the crime of the mother, and use of the same writ where a widow is suspected of feigning herself with child in order to produce a supposititious heir: 1 Bl. Comm. 456. In personal injury cases where the amount of damages to which a plaintiff is entitled is involved the rule in Pennsylvania is in accord with the majority of jurisdictions to the effect that it is within the discretion of the trial court to require the person injured to submit to a physical examination for the purpose of determining the extent of the injury, but that such order will be enforced by staying the proceedings or dismissing the action but not by punishment as for a contempt. The rule in this commonwealth was tersely expressed by Mr. Justice, afterward Chief Justice, MOSCHZISKER in *Cohen v. Phila. R. T. Co.,* 250 Pa. 15, 17, 95 A. 315, as follows: "We entertain no doubt of the right of a court, when one sues for alleged injuries to the person, to afford the defendant a proper opportunity to have a physical examination of the plaintiff made by skilled medical men. Of course, the court cannot order a plaintiff to submit to such an ordeal against his will, but it can, and, when the ends of justice so require, should refuse to permit the case to proceed until the plaintiff undergoes an examination." That case is likewise authority for the proposition that the exercise of such power is a matter within the discretion of the trial court and only subject to ap-

peal when such discretion is abused. This is the prevailing rule in the majority of the courts of the United States. See note to *Western Glass Mfg. Co. v. Schoeninger,* (Colo.), 15 L. R. A. (N. S.) 663.

As we have seen, it is a well settled principle that even a party may not be compelled forcibly to submit his body for tests, but the court may refuse to permit a case to proceed until such party undergoes an examination. We are here concerned not with a civil but a criminal case in which the commonwealth is the plaintiff. To refuse to allow a criminal case to proceed until a recalcitrant witness submits to an examination would deprive the commonwealth of its right and duty to enforce its criminal laws. In addition the granting of the prayer of the petition would result in more than a mere permission to inspect the body of the prosecutrix for it is proposed to insert a needle in her body and withdraw a small amount of blood for an examination. While, as we have indicated, such an operation is not regarded as entailing any serious danger to the health of the patient, it cannot be said that there is no danger for there is always present some risk of infection. Until the legislature finds that blood grouping tests have attained such scientific standing as to possess probative value as to paternity and that the ends of justice require action by it, and the legislature acts, the courts have not the power in a criminal case such as this to compel a prosecutrix or other witness to submit her body for blood tests.

Our conclusions are in harmony with those reached in other jurisdictions: *State v. Damm,* 252 N. W. 7, involving a blood grouping test; *State v. Allen,* 128 Wash. 217, 222 P. 502, *State v. Armstrong,* 87 Wash. 275, 151 P. 775, and *McGuff v. State,* 88 Ala. 147, 7 So. 35, 16 Am. St. Rep. 25, requests for physical examination of a victim in a rape case; *Rettig v. State,*

90 Tex. Cr. R. 142, 233 S. W. 839; *People v. Kemp,* (Cal.), 34 P. 2d 502.

Professor Wigmore (4 Wigmore on Evidence, §2220) presents a forceful argument in favor of compelling a party to submit his body for inspection and the enforcement of an order requiring such an exhibition of the body by contempt proceedings or other such remedy. His views, however, are contrary to those of the United States Supreme Court as expressed in *Union P. R. Co. v. Botsford,* supra, and those of our Supreme Court in *Cohen v. Phila. R. T. Co.,* supra.

The second assignment of error complains of the refusal of the court to affirm a written request to charge the jury that they could take into consideration the fact that the prosecuting witness refused to consent to have blood grouping tests made of her blood and of the blood of her infant child. The point was properly refused as the record does not show that she did refuse a proper request or any of the circumstances or time when such an alleged request was made. In addition the record is entirely void of proof as to the scientific accuracy of such test. We have only the assertions of counsel in the argument and references to certain scientific discussions. The blood grouping tests have not attained such standing as to justify a court in taking judicial notice of their value. Even in those jurisdictions where the courts have refused to order an examination of a plaintiff in a personal injury case, it has been held that the refusal to submit to an examination is proper subject of comment to the jury: 17 C. J. 1056. The Supreme Court in the Botsford case said: "If he unreasonably refuses to show his injuries, when asked to do so, that fact may be considered by the jury as bearing on his good faith, as in any other case of a party declining to produce the best evidence in his power." Our Supreme Court in *Cohen v. Phila. R. T. Co.,* supra (p. 17), said: "We agree with counsel for

the defendant that, when a suitor refuses to undergo a physical examination, the fact of his refusal can be considered by the jury, and, in most instances, might well justify an inference against him." Circumstances undoubtedly exist where a refusal to submit to inspection might be a proper subject of comment. Here a different situation is presented for it is not a mere inspection that is asked, but what amounts to a minor operation, and consequently a new question is presented. The court below was clearly right in refusing to charge as requested in defendant's third point. What situation may be presented on a retrial we do not know. The right of defendant to have such a point affirmed on retrial will have to be determined when the court is more fully advised as to the probative value of the proposed blood tests and all the circumstances connected with a request for permission to make the test, including any reasons assigned by the prosecutrix for declining to accede, if she does so.

Judgment reversed with a new trial.