## Commonwealth v. Keefer

*H. R. Berninger* and *D. A. Lewis*, for Commonwealth.

*Nicholas B. Piazza*, for defendant.

KREISHER, P. J., October 23, 1956.—Prosecutrix, a rather attractive high school graduate, aged 20, while an employe of the Geisinger Hospital and a resident of the Borough of Danville, was introduced to defendant in the early part of February 1954, and the latter part

of April they became engaged by the exchange of the usual promises and a ring and this fact was publicly announced in the May 11th edition of the Morning Press, a newspaper of wide general circulation published in the town of Bloomsburg, this county.

After the said engagement, the parties further consummated the same by indulging in sexual intercourse once or twice a week until the latter part of June. Prosecutrix contends that one of these occasions occurred during the evening of June 24th while the couple were baby sitting for a relative of prosecutrix and as a result thereof, a baby girl was born on April 10, 1955.

The engagement was terminated either in late June or early July and defendant became engaged to another girl whom he subsequently married in February 1955.

Prosecutrix says she thought she was pregnant in July and knew it for sure in August and gives this as the reason for the termination of their engagement.

Defendant was arrested on November 12, 1954, on the charge of fornication and bastardy. A true bill was returned by the Columbia County Grand Jury as both the birth of the child and the alleged place where the child was conceived is in the County of Columbia.

On May 2, 1955, just before the case was called for trial, defendant presented a petition to the court requesting that a blood grouping test be made in accordance with the Act of May 24, 1951, P. L. 402, 28 PS §306, which provides:

"In any proceeding to establish paternity, the court, on motion of the defendant, shall order the mother, her child and the defendant to submit to one or more blood grouping tests by a duly qualified physician to determine whether or not the defendant can be excluded as being the father of the child, and the results of such tests may be received in evidence but only in cases

498

where definite exclusion of the defendant is ·established."

The prayer of the aforesaid petition was granted, the case was continued over the term in May and again continued at the October term of court as the tests had not yet been completed. The case finally came up for trial at the January 1956 term before a jury and even though the pathologist making the tests testified that defendant could not be the father of the said child and defendant, himself, denied the intercourse on June 24th, but admitted at least one act of intercourse after the engagement, the jury returned a verdict of guilty.

Counsel for defendant immediately presented a written motion in arrest of judgment and for a new trial which are now before the court for disposition. Counsel for defendant admits under defendant's own testimony that he is guilty of fornication, but that because of the results of the blood grouping tests, which were in the negative, his motion in arrest of judgment on the charge of bastardy should be granted.

The Act of June 15, 1951, P. L. 585, 19 PS §871, considerably broadened the court's discretion in acting upon motions in arrest of judgment as the court may now not only act on errors appearing on the face of the record, but also on the grounds that the evidence was insufficient to sustain the charge, as said act provides:

"Hereafter, in all criminal prosecutions in this Commonwealth in which the jury shall have rendered a verdict against the defendant, the defendant may, in addition to making a motion in arrest of judgment on the grounds that there is error appearing on the face of the record, may make a motion in arrest of judgment on the grounds that the evidence was insufficient to sustain the charge, and if the court, after consideration of the entire record, shall decide that there is not sufficient evidence to sustain the conviction, it shall

forthwith discharge the defendant and dismiss the case."

The testimony was transcribed and filed January 27, 1956, but private counsel for prosecutrix and counsel for defendant did not rule the case for argument until the first Monday of August 1956, at which time the court heard oral argument of counsel on said motions.

Counsel for defendant in his argument stated that the motion in arrest of judgment should be granted on the grounds that the evidence is insufficient to sustain the charge, argues that the negative result of the blood grouping test is conclusive and ends the matter; however, no authority for this proposition has been brought to the court's attention and our independent research has revealed none.

Prior to the enactment of the above quoted act of assembly, the Pennsylvania courts held generally that the mother and child could not be compelled to submit themselves to such a test: Commonwealth v. English, 123 Pa. Superior Ct. 161; Commonwealth v. Morris, 22 D. & C. 111. In the English case, on page 169 of the opinion, it is stated:

"Until the legislature finds that blood grouping tests have attained such scientific standing as to possess probative value as to paternity and that the ends of justice require action by it, and the legislature acts, the courts have not the power in a criminal case such as this to compel a prosecutrix or other witness to submit her body for blood tests."

Even before the enactment of the above quoted statutes, if the parties voluntarily submitted themselves to the tests, the results thereof were admissible in evidence; however, not as positive proof but on the basis of expert testimony which the jury could consider along with all of the other testimony and give to it only such weight as they, in each particular case, might

choose to decide it was entitled to under all the circumstances: Commonwealth v. Zammarelli, 17 D. & C. 229.

The above quoted act of assembly now dispels all doubt in respect to the authority of the court to compel the parties to submit to a blood grouping test providing the request therefore is made in proper time (see Commonwealth v. Dean, 172 Pa. Superior Ct. 415, where the application for blood tests 38 days after the jury's verdict was refused for being belatedly and untimely made), and there is no longer any question about the results of the tests being admissible in evidence providing the results definitely established exclusion of defendant, but the act fails to provide what weight or conclusiveness shall be given to the results when admitted into evidence. The answer to this latter proposition must control our action on the motion in arrest of judgment.

If the act directed a negative result of the test to be positive and conclusive evidence, then upon the production of such evidence there would be nothing for the jury to pass upon and the court would then be authorized to take the matter out of the hands of the jury and direct a verdict of acquittal. In other words, the matter would become a question of law rather than a question of fact; however, the act contains no such directive.

We do not deem it necessary to this opinion nor do we entertain the thought that we have the ability or the experience to discuss the mechanics or the theories of these tests even though we find such a discussion in many of the reported cases. Our attempt to do so would simply be a matter of quoting what others have found, reported and concluded and since there are innumerable medical and legal treatises on the subject, we will refrain from such a dissertation. An excellent discussion on how these tests originated, are now made and

the reasons for the acceptance of their conclusions may be found in 163 A. L. R. 931 through 961. A brief statement in regard thereto is found in 20 Am. Jur. 326, Evidence, §352:

"A new and significant legal problem concerns the admissibility in evidence of the Landsteiner blood test, otherwise known as the Bernstein blood test. This test, which is devised to assist in the determination of the parentage of children, is postulated upon the existence of four types of blood, the type of blood of an individual being hereditary in accordance with Mendel's law. While the blood test cannot definitely ascertain that A is the father of B, it is asserted that in certain limited cases it can positively establish that A is not the father of B. The value of such a test and its reliability have been recognized by the courts, which hold that the result of such a test where made by a competent person, is admissible upon an issue of paternity."

Suffice it to say that there are some indications of possible error and imperfections under certain circumstances so that even though scientific tests of human blood and Mendel's theory of heredity are now universally used and accepted, there is still a possibility of error. This matter was discussed in the case of Commonwealth v. Krutsick, 151 Pa. Superior Ct. 164.

Since the legislation has not seen fit to declare the results of a blood grouping test positive and conclusive, it is generally held that the results are to be considered by the jury like any other admissible expert testimony and the reasons for this conclusion, among others, are broadly stated in 20 Am. Jur. 1056, Evidence, §1206:

"Notwithstanding the critical comments upon the value and credibility of expert opinion testimony to be found in many opinions, it is generally recognized that the relative weight and sufficiency of expert and opinion testimony is peculiarly within the province

of the jury to decide, considering the ability and character of the witness, his actions upon the witness stand, the weight and process of the reasoning by which he has supported his opinion, his possible bias in favor of the side for whom he testifies, the fact that he is a paid witness, the relative opportunities for study or observation of the matters about which he testifies, and any other matters which serve to illuminate his statements. In other words, the same tests which are commonly applied in the evaluation of ordinary evidence are to be used in judging the weight and sufficiency of expert testimony. The opinion of the expert may not be arbitrarily rejected; it is to be considered by the jury in view of all the facts and circumstances in the case and of the common knowledge and experience of mankind; and when such common knowledge utterly fails, the expert opinion may be given controlling effect."

Also in section 1208 of the same work, it is stated:

"There is, generally speaking, no rule of law which requires controlling effect or influence to be given to, and the court and jury are not required to accept in the place of their own judgments, the opinion testimony of expert witnesses merely because of the special knowledge of the witnesses concerning the matters upon which they give their testimony. Expert opinions are not ordinarily conclusive in the sense that they must be accepted as true on the subject of their testimony, but are generally regarded as purely advisory in character; the jury may place whatever weight they choose upon such testimony and may reject it, if they find that it is inconsistent with the facts in the case or otherwise unreasonable. Generally speaking, no distinction is made in this regard between expert testimony and evidence of other character."

In accordance with the foregoing principles the court in its charge to the jury, after reviewing the counts

in the indictment and pointing out the many safe-guards with which the law of Pennsylvania surrounds defendant in a criminal case for the benefit of defend-ant, such as the presumption of innocence, placing the burden on the Commonwealth to prove the guilt of defendant beyond a reasonable doubt, credibility of the witnesses, etc., pointed out that the results of the blood grouping tests and the testimony of the pathologist who performed the tests was admitted into evidence for the purpose of showing defendant's innocence, that the results of the tests and the doctor's testimony was substantive evidence of the highest kind and should be given due consideration by the jury, not, however, as conclusive evidence, but to be taken along with all the other evidence in the case, and it was then the jury's duty to determine the guilt or innocence of defendant from all the credible testimony in the case.

In granting a motion in arrest of judgment on the grounds that the evidence was insufficient to sustain the charge, it is necessary to examine not only the evidence of the defense, "but the sufficiency of the evidence must be tested according to the Common-wealth's evidence": Commonwealth v. Wright, 383 Pa. 532. Applying this rule to the case at bar, it is not difficult to understand why the jury concluded that the Commonwealth's evidence sustained the charge.

Prosecutrix was an attractive, calm, apparently intelligent, honest and impressive witness who told her story both on direct and on cross-examination in a quiet, sincere, logical, probable, fair and reasonable manner. She denied having any sexual relationships at anytime in her life with anyone other than defend-ant and this contention was not in any way contra-dicted by direct testimony or inference.

Her testimony of frequent dates with defendant and no other person during the period of her engagement to defendant was not only corroborated by her sister, but

not denied by defendant. On the other hand, the manner and appearance of defendant on the stand was not nearly so impressive as that of prosecutrix and the testimony of defendant failed to meet the tests of credibility in almost every respect, and therefore, except for the blood grouping result, there is an overwhelming sufficiency of Commonwealth's evidence to sustain the charge.

Counsel for defendant contends that the results of the blood grouping tests are conclusive because it was so held in the cases of Baker v. Weiss, 52 Dauph. 50, and Spencer v. Spencer, 53 Dauph. 241. An examination of these cases reveal that they are kindred cases and that they are not fornication and bastardy cases. The Baker case was an equitable proceeding for the purpose of perpetuating testimony relative to the legitimacy of a minor child born to a wife of a beneficiary of certain trusts and the cases, being decided prior to the Act of 1951 above quoted, merely hold that the results of a blood grouping test are admissible in evidence if voluntarily submitted to by the parties. It is true that a statement is made in the opinion that "these tests are accurate and reliable and are so regarded in informal medical and scientific circles," but nowhere in the opinion does it state the results of the tests are conclusive in fornication and bastardy proceedings.

The Spencer case was a declaratory judgment proceeding to determine legitimacy for the same purpose as in the Baker case and it is true that it is stated in the opinion "that blood tests showed conclusively that this child could not have ben the child of Lane H. Spencer, the putative father."

However, an examination of the testimony in both of these cases shows that they are vastly different from the case above because in addition to the blood test results, there was testimony to show nonaccess by the putative father and admitted access by strangers at

or about the time of conception so that the blood test was not actually conclusive in and of itself but merely considered along with all of the other evidence in the case, which evidence in those cases substantiated the correctness of the tests. In the present case before the court, except for defendant's denial, we have no such other evidence substantiating the correctness of the tests, but on the other hand, we have reasonable, probable, apparently credible testimony, together with the mute facts and circumstances which the jury must have believed that pointed to the incorrectness of the tests. We here note that according to special counsel for prosecutrix, this fact that the results of the tests must be incorrect was persisted in by prosecutrix at the time of the arrest of defendant, at the time of the birth of the child, at the time the results were made known to her and in open court under oath at the time of trial, and in each case giving as a reason for this persistence that it could not have possibly been the child of another man as she at no time ever had intercourse with any man other than defendant.

The testimony of prosecutrix in the present case is just the opposite of that in the Dauphin County cases as it shows frequent and likely access by the accused and by reason of the engagement and conduct of prosecutrix, nonaccess by strangers. Therefore, we conclude since the legislature failed to declare the results of a blood grouping test conclusive, the court is not at liberty to so declare and since there is sufficient evidence on the part of the Commonwealth to sustain the charge, the motion in arrest of judgment must be denied.

Counsel for defendant contends that in the event that the court should deny the motion in arrest of judgment, then it must certainly grant a new trial and submit the case to a subsequent jury. He bases this argument on the early case of Commonwealth v. Zam-

marelli, 17 D. & C. 229, wherein the court of Fayette County under similar facts and circumstances granted a new trial, and suggesting in the meantime that a subsequent test be made in a different laboratory, the results of which could be shown at the second trial. We have been unable to determine just what the final outcome of this case was, but we do not believe it is necessary for us to pursue that subject.

Counsel for defendant also contends that the case of Commonwealth v. Wright, 383 Pa. 532, is appellate authority for the approval of the granting of a new trial in cases of this nature. That case was originally heard in Delaware County with the jury returning a verdict of guilty even though a blood test was admitted in evidence which showed that defendant could not have been the father of the bastard child. Defendant's motion in arrest of judgment was dismissed by the lower court but the motion for a new trial was granted by a court en banc.

Defendant appealed to the Superior Court from the action of the lower court in granting a new trial and in a per curiam opinion filed May 11, 1955, reported in 178 Pa. Superior Ct. 181, it is stated:

"The six judges who heard the argument of this case being equally divided in opinion, the order of the court below granting a new trial is affirmed."

Thereafter, an appeal to the Supreme Court was allowed and in an opinion by Mr. Justice Arnold, filed January 3, 1956, 383 Pa. 532, the appeal was quashed on purely legal technicalities without passing upon the conclusiveness of the blood grouping test. At the bottom of page 535 of the opinion it is stated in italics as follows:

"The remedy in the court below if it concludes that error was committed in refusing to direct a verdict in favor of a defendant, is to grant a new trial."

The opinion of the lower court granting a new trial, reported in 42 Del. Co. 112, was written by Van Roden, P. J., who stated that a new trial should be granted because the issue was not properly presented to the jury. Sweney, P. J., filed a separate concurring opinion but dissented in part, the main dissent being stated in the last paragraph of the opinion as follows:

"In this case, I agree that a new trial should be granted but I believe that, at the re-trial, the same evidence being offered, the jury should be instructed by the trial judge to return the defendant not guilty."

This vital problem is ably dealt with in a case note appearing in 98 U. of P. Law Rev. 746, 747, where it is stated:

"Although blood tests cannot be used to prove paternity, in certain classes of cases their scientific validity is beyond question. However, the conclusive findings of science have not been accepted as such by the law. The jurisdictions split on whether the alleged father has a right to have blood tests made in the first instance. Eight states have settled the question by the passage of statutes. The further problem remains as to what weight should be accorded these tests when they are held to be admissible. Nearly all jurisdictions place no more weight on this than on other evidence, e.g., evidence that the alleged father had sexual intercourse with the complainant. The above mentioned statutes have had practically no effect on this issue, for none go beyond allowing the tests to be made and admitted in evidence. None expressly state what evidentiary weight should be given to these tests. At most, the findings are looked upon as expert testimony, to be accepted or rejected by the jury. New York alone has given conclusive weight to the finding of non-paternity through blood grouping tests. It is questionable whether even this jurisdiction would have given such

effect to the tests in absence of statute. Maine, in the instant case, clarifies its position taken in a recent case where a jury's finding contrary to scientific test of non-paternity was upheld. The court in the instant case holds that the *only question for the jury is whether the tests were properly made.* If so, then the jury must find in accordance with the scientific facts when they show non-paternity. This decision places Maine with New York in giving conclusive weight to accurately conducted tests. The court specifically bases its conclusion on the pressure of its statute, reasoning that the act shows a legislative intent to accept the scientific law of non-paternity in such cases as the one before it, and that such a law goes beyond the opinion of an expert.

"There should be no doubt as to the need for giving binding effect to such scientific findings. In practically all bastardy cases the sympathies of the jury are with the woman whose child has no father to support it, and against the alleged father who has usually had sexual intercourse with the complainant. This act alone generally raises the presumption of paternity.

"Whether the mother has had relations with others is usually a matter peculiarly within her knowledge. In view of these sympathies and prejudices, few courts have been willing to upset the jury's finding even where such findings are contrary to scientific facts. Since the avowed aim of the law is to make the actual father responsible for the support of his child there is no reason for the law to make one bear this burden who cannot possibly be the child's father. The easy solution would be legislative direction giving full weight to these biological findings, but in absence of such statutes, there seems to be no reason why the courts canont take judicial notice of them. Now that blood grouping tests are fifty years old, it is time for the law to accept what science has long acknowledged to

be beyond dispute. Stare decisis should yield in the light of scientific truth."

We are not inclined to advocate the conclusive position expressed by our learned friend, Sweney, P. J., but we are inclined to support the proposition expressed by the writer of the above quoted case note that the question of whether the tests were properly made should be submitted to the jury and then if they were found by the jury to have been properly made so that the possibility of error was negligible or nonexistent, then the tests should be accorded great weight and a man, though guilty of the charge of fornication, should not be made to bear the burden of contributing to the support of the child when a recognized scientific test shows he could not have possibly been the father of said child.

The act of assembly authorizing these tests seems to recognize the possibility of error as it permits the ordering of one or *more* tests.

The court in the Zammarelli case, supra, in granting a new trial likewise suggested another test should be made by a different pathologist at a different laboratory as a check, and that the results of this second test could be shown at the new trial.

True, the act states the results of these tests may be received in evidence only in cases where definite exclusion of defendant is established, but this expression, we believe, relates only to the right of defendant to introduce the results and certainly did not preclude the Commonwealth from showing a different result if such be the case of a subsequent test.

A review of our charge to the jury in this case as it relates to the blood grouping test convinces us that the same was inadequate, not properly presented to the jury and, perchance, was prejudicial to defendant's side of the case; therefore, to make certain no innocent

person is unjustly adjudged guilty in our courts, we believe a new trial must be granted.

However, we also believe that the Commonwealth should have the benefit of another test and that said act authorizes the court to order such a test. Therefore, we will include such a directive in the order granting the new trial.

Private counsel for prosecutrix argues the legislature never intended that the results of these tests, when properly made and excluding defendant, be accorded conclusive weight, for to do so would deprive prosecutrix of her day in court and would in effect be providing for trial by scientific medical tests in lieu of trial by jury.

Such is not the case, however, as prosecutrix still will have her day in court and it will still be up to the jury to determine if the tests were properly made. We must remember we are dealing with the criminal law which must be strictly construed and all element of doubt resolved in defendant's favor.

The criminal courts have for years been accepting many scientific findings as conclusive proof of facts pointing to the guilt of a defendant such as fingerprints, handwriting, ballistics, blood tests, etc.; therefore, why should the law not also recognize accepted scientific findings pointing to the innocence of defendant?

We think this is especially true in the type of case now before the court as it involves a social problem of many years' duration rather than a criminal problem requiring defendant's punishment and removal from society. To require a person to contribute to the support of a child for years when a scientific test shows him to be the child of another could conceivingly create such a disregard for the law that more serious criminal conduct might result from such an order, and

therefore, we believe that the interest of justice requires the granting of a new trial and to this end, we enter the following

### Order

And now, to wit, October 23, 1956, defendant's motion in arrest of judgment is denied; defendant's motion for a new trial is granted and it is further ordered and decreed that defendant, prosecutrix and the child submit themselves forthwith at a time and place to be agreed upon by counsel for the respective parties, to another blood grouping test to be performed by a different pathologist at a different laboratory than that of the original test.

It is further ordered and decreed that the costs of this second blood grouping test above directed shall be paid by the County of Columbia.